Lois S. **LEVIN**

v.

A. Russel **PARKHOUSE**, Frank H. Jenkins, Laurence H. Curry, Thomas E. Brady, Lawrence F. Flick, County of Montgomery.

Civ. A. No. 78–3977.

United States District Court,
E. D. Pennsylvania.

Jan. 21, 1980.

Peter F. Marvin, M. Duncan Grant and Lynne E. Delanty, Philadelphia, Pa., for plaintiff.

Roger B. Reynolds, Norristown, Pa., for defendants.

## MEMORANDUM

POLLAK, District Judge.

On October 24, 1978, Lois Levin was discharged from her position as a Children's Resource Assessor in the Mental Health/Mental Retardation Office of Montgomery County for her refusal to sign a loyalty oath required of all county employees. After attempting, through her attorneys, to obtain reinstatement without resort to the courts, Ms. Levin filed this action against the defendant County Commissioners on November 28, 1978, claiming violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983. The complaint and the accompanying motion for a preliminary injunction sought a declaration of the unconstitutionality of conditioning county employment on the taking of the prescribed oath, an order of reinstatement with back-pay, and an award of reasonable counsel fees.

A conference was held in chambers on December 13, 1978, and a hearing was held on December 15. That hearing produced a partial settlement—denominated a "Stipulation"—which I approved on December 21, 1978: Defendants agreed to reinstate Ms. Levin, and she in turn withdrew her motion for a preliminary injunction.

At a subsequent conference in chambers, on March 26, 1979, defendants' counsel agreed to recommend to the County Commissioners that they settle the claim for back-pay in the full amount demanded. In regard to plaintiff's claim for counsel fees, plaintiff's counsel agreed to present to the defendants a statement detailing the claim in the hope of arriving at a settlement of that matter as well. Ten months later, the parties having made no progress toward such agreement, the responsibility for making a determination of the amount of reasonable attorney's fees has devolved upon me.

Notwithstanding that her claim for reinstatement and back-pay was settled rather than adjudicated, Ms. Levin has clearly met the threshold requirement for an award of attorney's fees as a prevailing party under the Attorney's Fees Act of 1976, 42 U.S.C. § 1988. The terms of the final substantive settlement gave Ms. Levin all the concrete relief she sought. She has thus been more than "essentially successful," *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978), she has for all practical purposes been entirely successful, in this litigation.

■ 1. To arrive at a proper fee figure, one must first compute a "lodestar" amount, involving the time reasonably spent by plaintiff's attorneys and a suitable hourly rate. *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976).

Plaintiff has submitted a fairly detailed accounting of the time spent by each of her attorneys, compiled on the basis of contemporaneous time records. Defendants do not appear to challenge the accuracy of these submissions. Rather, defendants assert that "Plaintiff's counsel spent an exorbitant amount of time on a relatively simple and uncomplicated case." For example, defendants identify the hours spent in preparing the petition for counsel fees as far more than was required.[1] And in regard to the preparation of the motion for a preliminary injunction and the hearing thereon, defendants argue that, "the complexity of the case did not justify such exhaustive and learned discussion of the simple legal principles involved." Defendants then appear to ask that the fee award not be linked to the number of hours expended by counsel in the preparation of the case.

I disagree with the characterization of the time spent by plaintiff's counsel on this litigation as "exorbitant." The memoranda submitted, and the oral arguments made, on Ms. Levin's behalf, were of the highest calibre. The issues involved in this case were not so elementary that extensive research could be taken as indicating incompetence

---

1. Indeed, defendants for some time contended that the hours spent in petitioning for counsel fees may not be included in the fee award at all.

This contention was without merit. See *Bagby v. Beale*, 606 F.2d 411, 3rd Cir. 1979; *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978).

or inexperience. The submissions of plaintiff's counsel were not "unnecessary, frivolous, in bad faith or for the purposes of delay," *White v. Beal*, 447 F.Supp. 788 (E.D. Pa.1978), or designed to inflate the fee award. To the contrary, it is my perception that the expedition and excellence of plaintiff's counsel's initial presentation—cogent, comprehensive, compelling—had a strong catalytic effect in persuading defendants to enter into a prompt and full settlement of Ms. Levin's claims.

I cannot, however, approve all the hours documented by plaintiff's counsel. Defendants argue that Ms. Levin enjoyed the assistance of three attorneys from the firm of Pepper, Hamilton & Scheetz, where one would have sufficed. Plaintiff responds that a sensible division of labor was maintained among counsel, thereby avoiding duplication of effort. Plaintiff further explains that the decision to involve a third attorney—M. Duncan Grant, who is junior to Peter F. Marvin but senior to Lynne E. Delanty—was made to insure that there would have been an experienced attorney available as lead counsel in the event that Mr. Marvin had been called away to fulfill prior commitments on other firm litigation.

For the most part, plaintiff's documentation demonstrates a suitable division of labor. See *Commonwealth of Pennsylvania v. O'Neill*, 431 F.Supp. 700 (E.D.Pa.1977). In addition, I find that the participation of two counsel, given the basic division of responsibility, was appropriate in this case. The presence of a third attorney, to the extent his work provided a necessary and independent supplement to the work of the other two, is likewise compensable. However, to the extent that the choice to involve three attorneys resulted in a redundant presence at certain of the planning and strategy conferences, those hours will not be allowed. In this context, I note with approval that although three attorneys appeared for Ms. Levin at the December 15, 1978 hearing, she has requested compensation for only two.

Because it appears that Mr. Grant was the "third man in," I will single out his presence as that which was superfluous at certain conferences with respect to which compensation was sought for all three. Accordingly, I will excise four and one-half hours of Mr. Grant's discussions with his colleagues on or about November 28, 1978; his three-quarters of an hour of discovery conference on January 10, 1979; and his three-quarters of an hour of briefing in regard to the March 26, 1979 conference. Four hours of Mr. Grant's preparation time for the December 15, 1978 hearing and his four and three-quarter hours spent on the fee petition itself also appear superfluous in light of Mr. Marvin's and Ms. Delanty's contributions to these matters. Thus, Mr. Grant's claim will be reduced by a total of fourteen and three-quarter hours.

In regard to the drafting of the memorandum in support of the award of attorney's fees, I agree with defendants that the seventy-seven hours spent by Ms. Delanty on that document were more than the task reasonably required. I recognize that the product was of high quality and that the relatively modest rate at which Ms. Delanty has requested compensation for her services presupposes less familiarity with the issues and less efficiency in mastering them than could be expected of a more experienced attorney. However, I conclude that Ms. Delanty's excellent memorandum was in some real sense an exercise in hyper-perfection—which I do not begrudge, but which I am unwilling to require defendants to pay for. I estimate that a total of fifty hours was all that was reasonably necessary for this task. I do not agree with defendants that this assessment in any way taints my finding of reasonableness for other aspects of Ms. Delanty's fine work.

Thus, for purposes of computing the lodestar, reasonable hours are found as follows:

| | |
|---|---|
| Delanty: | 146.75 |
| Grant: | 36.00 |
| Marvin: | 59.00 |

As to the determination of an hourly rate, I find the rates customarily billed by these attorneys in the course of their employment at Pepper, Hamilton & Scheetz to be reasonable. I am aware that attorneys

of similar experience and qualification in the "public interest bar" may charge somewhat less for their services. However, by accepting the representation of Ms. Levin, these attorneys forewent the representation of other clients who would presumably have been billed at standard rates. Moreover, in the course of this representation, these attorneys obviously availed themselves of the substantial supportive services that a large private law firm provides but which public service law offices unfortunately cannot begin to afford. In light of the high quality of representation, the rates requested are well within reason.

Thus, the lodestar amount—here, $12,778.75—is computed as follows:

| | | | |
|---------|------------------|---|-------------|
| Delanty: | 146.75 x 45 | = | $ 6,603.75 |
| Grant: | 36.00 x 65 | = | 2,340.00 |
| Marvin: | 59.00 x 65 | = | 3,835.00 |
| | | | $12,778.75 |

■ 2. The Court of Appeals has instructed district courts to consider whether the lodestar figure should be adjusted to account for certain exceptional circumstances. In particular, one must determine whether an adjustment should be made on the basis of the contingent nature of the case and the quality of the representation afforded by plaintiff's counsel. *Lindy Bros. Builders v. American Radiator and Standard Sanitary Corp., supra; Lindy Bros. Builders v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973). In addition, the Court of Appeals has recently emphasized that in civil rights cases the "district court should evaluate the fee to be awarded in light of the important substantive purposes of the Civil Rights Act." *Hughes v. Repko, supra,* at 489.

Defendants do not seek a diminution of the lodestar under the heading of an adjustment for the quality of plaintiff's representation. They do claim, with the considerable hindsight of the promptly settling litigant, that the fee should be lowered to reflect what defendants now see as the certainty of the victory plaintiff would have gained by adjudication had defendants not acceded fully to her demands.

■ Defendants' claim that the fee award should be downwardly adjusted to reflect the assurance of ultimate victory is without legal merit. It is by now well established that the contingency adjustment may only be used to increase the lodestar figure, inasmuch as it reflects the risk an attorney takes when he first accepts a case that he might not be successful on the merits and therefore would be denied any fee at all. *Hughes v. Repko, supra,* at 487–88.

Defendants vigorously assert that the modest amount of money involved in this litigation (the sum of back-pay and pay earned from the date of Ms. Levin's reinstatement to the end of her temporary employment amounted to less than $4,000) demands a downward adjustment. Plaintiff responds that particularly in light of the fact that the defendants have, as an apparent but informally realized result of this litigation, ceased using the offending loyalty oath, the small sum in controversy is not a basis for a downward adjustment. More broadly, plaintiff argues that the size of the *ad damnum* is not part of the framework established by the Court of Appeals in *Lindy* and may not be considered at all in setting a reasonable fee.

As plaintiff notes, the many cases which have discussed the importance of the relief sought in setting a fee award, have tended to confine discussion of the amount ultimately obtained to the manner in which it might provide some index of the quality of representation. Thus, a *Lindy* quality adjustment upwards might be premised on a finding that an attorney has obtained maximum benefits in minimal time by efficiently prosecuting his claim. Or, a comparison of the results finally obtained with the sum initially sought might indicate inadequate representation which could be penalized by a downward adjustment. In further support of its position that the small sum involved in this case is irrelevant to my determination, plaintiff notes that the size of the ultimate recovery clearly presents no ceiling on the amount of an appropriate fee. Cf. *White v. Beal, supra* (granting a substantial award even though the net practical benefit of the lawsuit to the plaintiffs was nil).

I conclude, however, despite plaintiff's reading of *Lindy* to the contrary, that the use of either a small recovery or a small *ad damnum* provision in the complaint as a basis for lowering the lodestar under the "quality" rubric does *not* exhaust the significance, in arriving at a final fee award, of the amount initially sought or finally gained. Most of the lengthy list of factors that the courts have considered in setting appropriate fees, see *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (listing twelve factors including "the amount involved and the results obtained"), are easily collapsed into the *Lindy* framework. But even after *Lindy*, the district court retains the discretion to bring all appropriate considerations to bear in the calculation of a fee. See *Hughes v. Repko, supra* (refusing to prejudge the factors that the district court on remand might appropriately consider); *id.* at 489 (Garth concurring) ("post-*Lindy* discretionary adjustment may be made on the basis of any rational factors articulated by the district judge"); *id.* at 490 (Rosenn concurring) ("flexibility to consider . . . whether the attorney's time and expense in obtaining a favorable verdict were reasonable, in light of the actual amount recovered.") Cf. *Bagby v. Beal*, 606 F.2d 411, 3d Cir. 1979 (suggesting that adjustments even to the portion of the award based on time spent preparing the fee petition itself may be made on the basis of the *Johnson* enumeration of factors). Thus, the amount of money at stake for the plaintiff, in a proper circumstance, and in light of the broader service of the litigation to the purposes of the Civil Rights Act, may be a part of the attorney's fees equation.

[6] But this case does not present a suitable circumstance for lowering the award on the basis of the small sum involved. In short, I would not as a general matter think counsel for civil rights plaintiffs should be given carte blanche to pursue extravagant constitutional claims motivated principally by the anticipation that generous compensation will be forthcoming from the deep pockets of state or local governments. Here, however, it appears that before rushing into litigation, plaintiff offered defendants a more amicable method of resolution. Defendants elected to resist until shown the basic weaknesses of their position by the convincing presentation of plaintiff's counsel. Indeed, plaintiff appeared ready to accept a reasonable compromise as to the award of fees both before and after the considerable additional expenditure of time and effort involved in preparing the fee petition itself. Defendants sturdily—and, in my respectful view, unwisely—refused to recognize the substantial merit in plaintiff's claim for fees for her attorneys. Thus, I cannot find the efforts I have determined to have been reasonably expended in the course of my lodestar determination to be inappropriate in this case solely on the basis of the small sum involved. Nor can I decide that, in some absolute sense, Ms. Levin's constitutional rights, and the rights of others who may reap incidental benefits from Ms. Levin's insistence on her due in this litigation, were not worth the price her able attorneys would customarily charge to see them vindicated.

## II.

Plaintiff has requested compensation of $185.30 as costs. Although the defendants have not objected to the itemized disbursements, I note that the plaintiff's submission includes a figure of $131.30 for "duplicating." The litigation phase of this case was short-lived and as such generated very little "paper." In this light, this claim apparently refers to copying expenses accumulated in the course of pursuing legal research and of furnishing multiple copies of court papers. It does not appear to refer to fees for "copies of papers necessarily obtained for use in the case" within the meaning of 28 U.S.C. § 1920(4). As essentially a cost of doing business, I will disallow it. In addition, plaintiff's counsel have, in lawyerly fashion, erred in their arithmetic by overstating the total of individual disbursements by one dollar. The final cost figure will thus be fifty-three dollars.

### III.

Defendant has asserted that I lack jurisdiction to award counsel fees because plaintiff failed to exhaust her administrative remedies before bringing this litigation to federal court. In the stipulation approved on December 18, 1978, defendant waived all defenses that could have been raised in response to the motion for preliminary injunction. Since that date, the parties have acknowledged that the determination of the proper fee might ultimately devolve upon me. Thus, whatever might have been the merit of this defense to the underlying cause of action, had defendants elected to pursue the principal controversy to adjudication, defendants may not at this late date reassert it to avoid the payment of counsel fees.

### IV.

For the foregoing reasons, I will enter an order awarding plaintiff counsel fees and costs in the sum which I conclude is a proper modification of the $14,952.50 in fees and $185.30 in costs claimed by plaintiff—to wit, $12,778.75 in counsel fees and $53 in costs.