Ruby M. EVANS

v.

LOCAL NO. 8–86 et al.

Civ. A. No. 77–653.

United States District Court,
E. D. Pennsylvania.

Sept. 24, 1980.

Theodore Q. Thompson, Ambler, Pa., for plaintiff.

Markowitz & Kirschner, Neal Goldstein, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

On February 21, 1979, the parties, acting on my recommendation, formally agreed to stay proceedings in this case while plaintiff pursued certain internal union procedures which the union agreed to make available to her. Those procedures effectively provided plaintiff the relief she had sought under Sections 101, 102, and 609 of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411(a)(2), 412 and 529: the dropping of charges and the rescission of all action previously taken by the union against plaintiff, for her comments critical of union leadership. In a memorandum–order dated June 27, 1980, I concluded that the disposition favorable to plaintiff entitled her to an award of attorney's fees under Section 102 of the LMRDA.

### A.

Defendants have asked that I reconsider that determination, objecting, in particular, to my observations that "there is no ground for supposing that the defendants would have moved to remedy the matters complained of had she [plaintiff] not initiated suit." It is defendants' position that it was plaintiff who delayed the resolution of this controversy by commencing this action before exhausting internal union procedures.

Defendants have previously raised the exhaustion issue, by way of motion for summary judgment, as a bar to plaintiff's substantive claim. On May 1, 1978, Judge Fogel denied their motion, concluding that exhaustion was not required in this case

because "resort to the intra–union procedure would be futile." Judge Fogel's finding appears to be adequately supported by the record.[1] In his May 1, 1978 order, Judge Fogel stated that his determination would not restrict defendants' further discovery on the issue, and would not preclude a renewed motion if based on newly discovered evidence. Defendants renewed their motion on November 20, 1978. That renewed motion was pending before me when plaintiff agreed to submit, and defendants agreed to permit the submission of, the matter to the union for reconsideration of its prior decision against the plaintiff.

The defendants' second motion for summary judgment was essentially a restatement of the first. Apart from some further factual specification of the nature of plaintiff's right to appeal adverse local union action to the International Union's Executive Board, there was little in the way of new evidence presented. And, indeed, the existence of this appellate avenue was made known, and its significance was argued, to Judge Fogel in defendants' earlier submissions. Thus, defendants have not offered any persuasive basis upon which I might depart from Judge Fogel's determination, and that determination remains the law of the case as I approach the question of attorney's fees.

■ Where a plaintiff has achieved substantial benefits for the union membership by pressing rights under the LMRDA, the rule of *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), would not be well–served by requiring, as a pre–condition to an award of attorney's fees, the exhaustion of intra–union procedures not otherwise a predicate to plaintiff's lawsuit. But plaintiff's failure to pursue more amicable means of resolving the controversy is relevant to the determination of a suitable

fee award. Indeed, it is one of many factors appropriately considered as a basis for adjusting the *Lindy* [*Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976)] lodestar amount. *Levin v. Parkhouse*, 484 F.Supp. 1091 (E.D.Pa.1980).

### B.

■ ▪ The *Lindy* computation follows:

### (i) Lindy Lodestar

Plaintiff's attorney has submitted an affidavit which purports to describe his activities on behalf of his client in this litigation.[2] The affidavit is not accompanied by a copy of contemporaneous time records–the best method of documenting time expended. And in some features, the affidavit provides insufficient detail to permit an accurate assessment of fees. For example, an allocation is requested for eight hours (8.0 hours) of time spent in conference with plaintiff, and seven hours (7.0 hours) for conferences with defendants' attorneys. No dates are provided for either of these categories and the subject matter of these conferences is undisclosed. The statements are apparently approximations, and they are incapable of verification on the record before me. They will be disallowed. Most of the other items identified in the affidavit relate to specific aspects of the litigation, including preparation of pleadings and conferences with the court. Supporting evidence of plaintiff's attorney's efforts on these matters is to be found in the form of submitted documents and court appearances. For the most part, plaintiff's statement of the hours he spent on each of these tasks is well within reason. However, in regard to item "(k) Draft Plaintiff's motion for summary judgment," it should be noted that plain-

---

1. Although Judge Fogel did not elaborate on the factual basis for his decision, it seems reasonable to suppose that he gave weight to, *inter alia*, the union's by–laws explicitly banning statements of the sort made by plaintiff, and the close personal relationship between the charging party and the union leadership.

2. In his initial submission on the question of fees, plaintiff's counsel offered the unelaborated estimate of 150 hours. In my June 27 memorandum–order, I directed plaintiff to submit an affidavit, in accordance with the law of this Circuit, better detailing his claim. Plaintiff's attorney's affidavit attempts to document 93.5 hours of time spent on plaintiff's case.

tiff's motion was, in some substantial measure, a restatement of issues well presented in an earlier submission. I will thus reduce the time stated for this item for 12.5 hours, to a more reasonable 4 hours. This leaves 70 hours of chargeable time for the lodestar determination.

As to the appropriate hourly charge, plaintiff's attorney concedes that when he undertook plaintiff's representation, he was inexperienced in this type of litigation. As he acknowledges, his efforts on behalf of his client bespeak a "learning curve," from the time in 1977 when this action was begun, to the present. Given the relative inexperience of counsel in these matters, and the somewhat lower fees prevailing at the time when the bulk of the activity in this litigation occurred, I deem $40 per hour–rather than the $50 per hour contended for–to be an appropriate rate.

The following will thus represent the *Lindy* lodestar amount:

70 hours $\times$ $40/hr. = $2800

### (ii) <u>Lindy</u> Lodestar Adjustments

At the outset, I should note that I cannot conclude that this litigation, and the manner in which it was pressed by plaintiff, did not contribute measurably to defendant–union's decision to afford plaintiff a second opportunity to contest the charges brought against her, and, more importantly, to the positive result achieved by plaintiff in the second consideration which the union gave to plaintiff's case. But I do agree with the defendants that, prior to instituting this lawsuit, plaintiff did not diligently pursue a more amicable–and less expensive–resolution of the controversy. Plaintiff did not cooperate with the union's investigating committee as it attempted to formulate a recommendation in regard to the charges which had been filed against her. And plaintiff commenced this litigation at a time when she admittedly faced charges, but had not yet received any formal censure, arising out of her statutorily protected

activities. While I cannot say with any certainty that informal efforts, before beginning litigation, would have shortened the controversy while providing results as satisfactory to plaintiff as those ultimately achieved, it is appropriate to consider, in assessing attorney's fees, whether the litigant, or potential litigant, who is also the potential recipient of a court–ordered fee award, has made all reasonable efforts to reach a fair and amicable resolution before invoking the jurisdiction of the court.

This case presents a second, and related, basis for a *Lindy* adjustment. When filed, plaintiff's complaint was somewhat premature. The union had not yet taken any formal action against the plaintiff. The complaint thus set forth what at that time was no more than a prediction–that, if the charges by a union member against plaintiff were sustained, plaintiff would bear the loss of substantial income. But while the union did sustain the charges shortly after the complaint was filed, it imposed no formal sanction. While the statutory rights vindicated by the plaintiff were significant, the absence of any concrete financial loss militates somewhat against the imposition of a heavy fee award on the defendants. In this case, the small sum involved, combined with the undue haste with which plaintiff proceeded to court, warrants a substantial reduction in the lodestar amount. Compare *Levin v. Parkhouse, supra.* I will reduce the lodestar by half. The final computation will thus be:

$2800 $\div$ 2 = $1400.

Wherefore, I will enter an order awarding plaintiff that sum.[3]

---

**3.** Plaintiff requests an award of costs. The request is not accompanied by an appropriate itemization, and will be denied.