508 F.Supp. 567 (1980)
PLANNED PARENTHOOD ASSOCIATION OF SOUTHEASTERN PENNSYLVANIA, INC. and John Franklin, M.D. on his own behalf and on behalf of all others similarly situated
v.
The COMMONWEALTH OF PENNSYLVANIA.
Civ. A. No. 74-2440.
United States District Court, E. D. Pennsylvania.
December 31, 1980.
As Amended March 3, 1981.
*568 Sharon K. Wallis and Roland Morris, Duane, Morris & Hecksher, Philadelphia, Pa., for plaintiffs.
John T. Kalita, Deputy Atty. Gen., Philadelphia, Pa., for defendant.

MEMORANDUM
CLIFFORD SCOTT GREEN, District Judge.
This action challenged the constitutionality of the Pennsylvania Abortion Control Act of 1974, 35 P.S. § 6601 et seq., a comprehensive statute passed in the wake of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Now before the Court is plaintiffs' petition *569 for an award of counsel fees. The defendant from whom the award is sought, the Commonwealth of Pennsylvania, concedes that plaintiffs are entitled to fees from it under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[1] However, the Commonwealth opposes the instant petition on two grounds. First, it contends that plaintiffs seek, but may not recover, compensation for time spent on issues which plaintiffs ultimately lost. Second, it argues that much of the time claimed by plaintiffs' counsel on successful claims was unnecessary or duplicative.
I held an evidentiary hearing to consider these objections. With the benefit of that hearing, I restrict the fee award only to the claims on which plaintiffs prevailed, calculate the "lodestar", adjust for contingency and, further adjust for the benefit realized in furthering the important substantive purposes of the Civil Rights Act.
The history of this litigation has been reported in two opinions, Colautti v. Franklin, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 579 (1979) and Planned Parenthood v. Fitzpatrick, 401 F.Supp. 554 (E.D.Pa.1975). I will not repeat it here, save to point out the final disposition of the issues raised. Plaintiffs prevailed in their challenge to the spousal and parental consent requirements of the Act, the reporting and criminal enforcement provisions accompanying the consent requirements, and the Act's restriction on abortions where the fetus "may be viable." They were unsuccessful in litigating the Act's definitions of "viable" and "informed consent", the public funding prohibition, the advertising prohibition, and all sections which empowered the Pennsylvania Department of Health to promulgate regulations governing abortions. Plaintiffs also failed in their attempt to have the Act declared unconstitutional in its entirety.
The Commonwealth concedes that plaintiffs are a "prevailing party" entitled to fees under the 1976 Fee Award Act. That Act provides that "the Court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 42 U.S.C. § 1988. However, relying on Hughes v. Repko, 578 F.2d 483-87 (3d Cir. 1978), it argues that plaintiffs are a "prevailing party" only insofar as they were successful in pressing their claims. To the extent that the claims failed, the Commonwealth argues, plaintiffs were not a "prevailing party" and thus may not receive fees under the 1976 Act.
Plaintiffs contend, on the other hand, that compensation should be granted for all the time invested in the litigation of this action. Acknowledging Hughes, they insist that only one "claim" was asserted in the casethat the Act unlawfully infringed on the constitutionally protected rights of physicians and their patients. Since they substantially succeeded on this claim, plaintiffs contend that they are entitled to counsel fees for all the legal services rendered.
By insisting that only one claim was advanced in this multifaceted litigation, plaintiffs are attempting to distort history and to avoid the clear mandate of Hughes. It is clear to me that the action encompassed several distinct claims for plaintiffs' success in invalidating any one provision of the Abortion Control Act did not guarantee, or necessarily contribute to, success in invalidating any other. The original complaint acknowledged this fact by separately titling the averments "causes of action." Moreover, in fidelity to Hughes, even if I accepted plaintiffs' contention that only one claim was asserted, I could award fees only for those hours that were "reasonably supportive" of it. Since all but two of the Act's sections were challenged on dissimilar grounds, the time spent on unsuccessful issues rarely supported plaintiffs' success. Thus, as far as fees are concerned, plaintiffs fare no better with one claim than with several.
Alternatively, plaintiffs argue that the case at bar is distinguishable from *570 Hughes. They point out that in Hughes, no public interest was served by pursuit of the unsuccessful claim for damages. Here, by contrast, the unsuccessful litigation helped to define the scope of constitutionally protected rights. Also, plaintiffs cite cases from other circuits which have given a broader interpretation to the 1976 Fees Awards Act and have allowed compensation for "all legal work reasonably calculated to advance the client's interest." See Northcross v. Board of Ed. of Memphis City Schools, 611 F.2d 624, 636 (6th Cir. 1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); Brown v. Bathke, 588 F.2d 634 (8th Cir. 1978).
In Hughes the Court of Appeals recognized that it is not always easy to determine who is the "prevailing party" for purposes of the 1976 Fee Award Act, particularly where there are multiple claims and/or multiple parties, and where the petitioning party is not completely successful. The court said that in order to apply the language of the statute fairly, district courts should analyze the results obtained by the petitioning parties on particular claims, awarding fees for the prosecution of those claims where the petitioner essentially succeeded on such claim, as "claim" is used in Fed.R.Civ.P. 10(b). This analysis does not permit an award for having declared, unasked, that sections of the challenged legislation are constitutional. In short, the public policy considerations cited by plaintiffs simply do not make them a "prevailing party" under the 1976 Fee Award Act when they lose. At least in our judicial circuit, plaintiffs may recover fees under the Act only whenand to the extent thatthey have essentially succeeded on their claim.

II.
I turn now to the questions raised concerning the services attributable to the successful claims. The Commonwealth argues that four categories of services were not reasonably supportive of plaintiffs' successful claims: (1) services devoted to those sections of the Abortion Control Act which the three-judge panel or the Supreme Court upheld; (2) services in behalf of the contention that the Act was unconstitutional in its entirety; (3) services performed on behalf of Planned Parenthood, CHOICE and Clergy Consultation, the groups that were dismissed as plaintiffs for lack of standing; and (4) services performed prior to the formal intervention of the Commonwealth as a defendant.
The first two categories of services represent instances where plaintiffs challenged the validity of the Abortion Control Act and failed. Therefore, they fall squarely within the statement by the Court of Appeals that "... the fee-petitioner cannot be treated as the prevailing party to the extent he has been unsuccessful in asserting a claim." Hughes, supra, 578 F.2d 483 at 487. Such services are compensable only if they overlapped and also supported the prosecution of a successful claim.
At hearing, counsel for plaintiffs testified that there was only one area of overlap. The research and discovery on the "viable" issue, which plaintiffs lost, were basically the same as those on the "may be viable" issue, which plaintiffs won in the Supreme Court. See Colautti v. Franklin, supra, 439 U.S. 379. Because the work on the "viable" issue contributed to plaintiffs' success on the "may be viable" claim, it is compensable as a service reasonably supportive of a successful claim. See Hughes, supra, 578 F.2d 483 at 487. However, I will deny compensation for work on the definition of "informed consent," the public funding prohibition, the advertising prohibition, the sections of the Act empowering the Department of Health to promulgate regulations governing abortions, and the challenge to the Act in its entirety. That work did not reasonably support plaintiffs' successful claims and is noncompensable under Hughes.
The next area of dispute concerns services performed on behalf of Planned Parenthood, CHOICE and Clergy Consultation, all of whom were dismissed for lack of standing. Insofar as those services were substantive and were addressed to the validity *571 of the Abortion Control Act, it is clear that they furthered the successful claims of the plaintiffs with standing and, accordingly, are compensable as "reasonably supportive" of plaintiffs' successful claims. The Commonwealth's contention, as I understand it, is actually focused only on the litigation of the standing issue itself. As was brought out at hearing, the Commonwealth had contested the standing of all named plaintiffs. In reply, petitioners took the position that the standing of the referral agencies was irrelevant, since the physician-plaintiffs would supply the concrete adverseness required to raise all the claims. Ultimately, the court dismissed the referral agencies but found, as plaintiffs had contended, that the claims of the physician class did present a justiciable controversy. Far from having failed on the standing question, plaintiffs actually avoided becoming mired in an ancillary issue which had little, if any, relevance to the substantive merits of the lawsuit. They expended no additional time seeking to show that the referral agencies should have been retained as plaintiffs. This tactic proved to be successful, and plaintiffs should be compensated for the claims on which they prevailed without deduction because some of the parties were dismissed.
The Commonwealth urges that no award should be made for services performed prior to the Commonwealth's intervention as a defendant. This contention misrepresents the actual conduct of the litigation. At the outset, the Secretary of Welfare for the Commonwealth was named as a defendant. Although her interest in the action was limited to the public funding issue, a claim on which plaintiffs did not prevail, the state's attorneys retained to represent her vigorously supported every aspect of the Abortion Control Act. Indeed, the record shows that they defended portions of the Act that the District Attorney of Philadelphia, the other defendant, had conceded to be unconstitutional.[2] It was the state's attorneys, not plaintiffs, who brought the Commonwealth into the suit as a named defendant. Given this background, it is entirely reasonable that the Commonwealth pay the expenses for legal work performed prior to its formal intervention. Many of those services laid the groundwork for plaintiffs' eventual success and many were necessitated only by the uncompromising zeal of the state's attorneys.

III.
I turn now to the calculation of the lodestar. Throughout this litigation, plaintiffs were represented by three attorneys, Sharon K. Wallis, Roland Morris and Sheri B. Friedman. Ms. Wallis did not keep contemporaneous records of her time. However, after twice reviewing the docket entries, her own calendar records, pleadings and Mr. Morris' entries, she reconstructed the hours she devoted to the prosecution of this action. The Commonwealth does not contest the accuracy of her reconstruction and, after independent scrutiny, I accept Ms. Wallis' testimony that she has actually understated the time she invested.
The reconstruction submitted by Ms. Wallis contains a breakdown of her services by issues, hours expended and type of work performed. Of the 455.5 hours of legal services listed, 336 were reasonably supportive of the successful claims, 78 were spent on the preparation of the petition and 41.5 hours were devoted to claims which, as I set out above, failed and hence are noncompensable.
Mr. Morris is a senior partner in a Philadelphia law firm. Ms. Friedman, an associate in that firm, worked under his direction. Both attorneys have submitted contemporaneous time records to document the hours invested in this action. Although the records do not classify the hours on an issue-by-issue basis, I am able to ascertain the time devoted to successful claims from Mr. Morris' testimony at hearing.
*572 He testified that he and Ms. Friedman performed the work on the spousal and parental consent provisions of the Act, the related enforcement and reporting requirements, the advertising prohibition and the "may be viable" restriction. Work on the latter issue was divided between Ms. Wallis and Mr. Morris with Ms. Friedman. Of the claims pressed by them, only one was unsuccessful, the challenge to the advertising prohibition. At hearing, Mr. Morris testified that the law regarding the advertising section was relatively clear and therefore he spent little time on it. I credit that testimony but will exclude from the number of hours requested by them ten hours for the advertising issue. The total number of hours of service after the aforesaid reduction is 465 of which 265.20 is attributable to the services of Mr. Morris and 199.80 is attributable to Ms. Friedman's work.
Having determined the number of compensable hours spent by counsel, I now move to the next step in calculating a fee lodestar, namely, whether that number was reasonably necessary to produce the benefit conferred. See Lindy Bros. Builders of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 at 166-68. Since the Commonwealth concedes the reasonableness of the hourly rates requested by petitioners, the "reasonably necessary" issue step marks the last area of dispute in the computation of a lodestar for petitioners' services. I need only multiply the rates requested by the hours that were reasonably necessary in order to generate the lodestar figure. See Lindy I, supra, 487 F.2d at 166-68.
The Commonwealth alleges several instances of wasteful services. It argues that there was no need for plaintiffs to retain more than one attorney, that the work performed by Ms. Wallis and Mr. Morris was duplicative since the "viable" and "may be viable" issues were divided between them, that paralegals could have been used in some instances, and that petitioners' failure to specify the precise nature of their research precludes recovery for any time spent on it. The Commonwealth argues further that Ms. Wallis should be denied compensation for a twelve hour meeting with other attorneys relating to strategy in coordinating challenges to the Act; it also argues that Mr. Morris should receive no compensation for telephone conversations related to the case or for telephone calls briefing the news media on the progress of the suit.
At hearing, the Commonwealth availed itself of the opportunity to cross-examine petitioners with regard to each of these matters. The answers furnished by petitioners were candid, detailed and complete. I therefore credit their testimony.
First, Ms. Wallis and Mr. Morris testified that neither could have handled the case without the assistance of the other. This testimony can hardly be considered surprising, given the magnitude of the litigation and the extent of the resistance from the Commonwealth's attorneys. Significantly, the Commonwealth itself retained two private attorneys to conduct the defense. I find no factual support for the contention that the litigation could have been satisfactorily handled in less time by only one attorney.
Ms. Wallis and Mr. Morris testified further that there was no duplication of effort. While work on the "may be viable" issue was shared, it was shared according to a functional division of responsibility. Thus, Ms. Wallis drafted those sections of the pleadings and briefs that addressed both viability issues. Mr. Morris handled the appeal of the "may be viable" claim. Both attorneys examined witnesses to develop the factual record on these issues, but each examined different individuals. The record does not support a finding that fewer hours would have been reasonably necessary if only one attorney had represented plaintiffs. On the record before me, the compensable hours allowed do not include any duplication.
The Commonwealth contends next that petitioners should have used paralegals or other nonprofessional personnel on two occasions. Cf. Prandini v. National Tea Co., 557 F.2d 1015, 1020 (3d Cir. 1977). The first *573 was in the filing of the initial pleadings. This task was performed by Ms. Wallis and is listed as consuming two hours. At hearing, Ms. Wallis testified that filing this action involved more than simply dropping off the papers. Specifically, plaintiffs sought to have the case heard by a three-judge panel before the effective date of the Act. This, in turn, required the recognition of a related case designation which was not free from doubt. Ms. Wallis said that she spent the two hours explaining to the judges assigned why the cases were related under our local rule. I find on the basis of this testimony that the time requested was reasonably necessary to produce the benefit conferred and the legal service could not have been effectively performed by paralegals.
The second instance where a paralegal could have been used, in the Commonwealth's view, was at the Supreme Court argument on the "may be viable" issue. Mr. Morris delivered the argument but he took Ms. Friedman with him. The Commonwealth argues that Ms. Friedman's presence was unnecessary. On cross-examination, Mr. Morris testified that he had a dual purpose in bringing Ms. Friedman. Her presence was essential so that she would be available for consultation since she had done much of the basic research. An incidental benefit to Ms. Friedman was the exposure to Supreme Court practice. I accept the testimony of Mr. Morris that the availability of Ms. Friedman was essential and thus I find this service reasonably necessary; notwithstanding, the incidental benefit to Ms. Friedman.
The Commonwealth's next argument is that petitioners should be denied fees for hours listed under the heading "general research." This description of the service is too vague, the Commonwealth contends, to permit compensation. The same argument is advanced in relation to the telephone calls for which Mr. Morris seeks compensation. Mr. Morris has documented the time spent on research and on telephone conversations by means of contemporaneous time records. The accuracy of those records has not been contested by the Commonwealth.
Furthermore, Mr. Morris testified that the telephone calls were related to this case and that he was conservative in billing his time. Lindy I requires only that the fee-petitioner state the general activity for which recovery is sought. Lindy I, 487 F.2d at 167. Mr. Morris' application and testimony adequately satisfies this requirement.
The hours of "general research" claimed by Ms. Wallis are based on reconstructions. Nevertheless, after comparing the time claimed to the issues next to which they are listed, I am satisfied that those hours were reasonably necessary to produce the benefit conferred. I reject the Commonwealth's suggestion that there was duplication in the research of Ms. Wallis and Mr. Morris as it is controverted by the testimony of record, which I credit.
Finally, the Commonwealth contests the necessity of Ms. Wallis' meeting with outside attorneys and of Mr. Morris' briefing the news media. Ms. Wallis testified that her twelve hour meeting was spent discussing litigation strategy for this case. The two attorneys with whom she met were both experts in the field of womens' rights and had been co-counsel with Ms. Wallis in a case closely related to this litigation. From this testimony I find that the working session was reasonably necessary to produce the benefit conferred.
I will deny fees for the time spent conferring with the media. I credit Mr. Morris' testimony that the time actually was spent, however, I reject petitioners' contention that it was reasonably necessary to advance their claims.
In summary, of the total number of hours invested by plaintiffs' counsel on the issues on which they prevailed, I find that only 4.2 hours were not reasonably necessary to produce the benefit conferred. Those hours represent the time spent by Mr. Morris in briefing the media. The compensable hours of Mr. Morris are thus determined to be 261.
Since the uncontested billing rates appear of record and the hours involved are set forth above, I see no value in reproducing *574 them here. The lodestar for Ms. Wallis is thus $31,050.00. The lodestars for Mr. Morris, after the aforesaid deduction, and Ms. Friedman are $22,415.00 and $7,997.00, respectively.
Petitioners have requested a specific increase in the lodestar amount but have not suggested a particular amount, instead they have asked the Court to grant an increase based on its familiarity with the case and with counsel. I find that an upward adjustment in the lodestar is warranted by the delay in recovering the fees and by the importance of this action to the Civil Rights Act upon which plaintiffs relied.
This action began in 1974, nearly six years ago, and has twice been before the United States Supreme Court. Over the course of the litigation, petitioners received neither compensation nor reimbursement for the substantial amounts of time they devoted to the case. It is well settled that, under the rubric of contingency, petitioners may be compensated for the contingent nature of services and/or for the delay experienced in recovering their fee. See Lindy Bros. Builders of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 117 (3d Cir. 1976) (hereinafter "Lindy II"). After careful consideration of all factors, I will increase the fee lodestars by 10% to satisfy this concern.
Also, I will adjust the lodestar to reflect the importance of this action to the cause of civil rights. In Hughes, the Third Circuit recognized that the reasonableness of a fee award must be evaluated in light of the "private attorney general" policy behind the 1976 Fees Awards Act. Hughes, supra, 578 F.2d 483 at 488-89. Here, petitioners acted as private attorneys general to the fullest. The importance of the constitutional rights vindicated by plaintiffs cannot be questioned. The violation necessarily pervaded the entire state and affected not only the physician class named as plaintiffs, but also all women who might seek an abortion within the Commonwealth. I note also that the theories upon which plaintiffs were proceeding were not settled at that time.
To reflect the importance of this action to the substantive purposes of 42 U.S.C. § 1983, I will adjust the lodestar upward by a factor of 50%.
The total fee awards for petitioners are as follows:
Ms. Wallis$49,680.00 ($31,050 plus an adjustment of $18,630.00).
Mr. Morris$35,864.00 ($22,415.00 plus an adjustment of $13,449.00);
Ms. Friedman$12,795.20 ($7,997 plus an adjustment of $4,798.20).
Petitioners have also requested reimbursement for the costs of the litigation. There being no objection from the Commonwealth, I will award costs in the amounts sought$2,342.33 to reimburse Roland Morris for the Duane firm and $442.00 for Ms. Wallis.
NOTES
[1] Counsel fees and costs are sought from the Attorney General of Pennsylvania in his official capacity and the Commonwealth of Pennsylvania, both intervenor defendants, and both referred to herein as the Commonwealth.
[2] The Commonwealth already has withdrawn its contention that liability for the fee award should be shared by it and the District Attorney.