578 F.2d 483
 John W. HUGHES and Cynthia P. Hughes, his wife
v.
John S. REPKO and Mrs. John S. Repko, his wife, Appellants
in No. 77-1728.
Appeal of John W. HUGHES, Cynthia P. Hughes and their
attorney, Jay Feldstein, in No. 77-1727.
 Nos. 77-1727, 77-1728.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 15, 1978.
Decided May 12, 1978.
 
 Michael P. Malakoff, Berger, Kapetan & Malakoff, Pittsburgh, Pa., for appellants in No. 77-1727 and cross-appellees in No. 77-1728.
 Joseph A. Del Sole, Girman & Del Sole, Pittsburgh, Pa., for appellees in No. 77-1727 and cross-appellants in No. 77-1728.
 Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.OPINION
 
 
 1
 SEITZ, Chief Judge, delivered the opinion of the Court.
 
 
 2
 Plaintiffs, husband and wife,[1] appeal from an order of the district court awarding them attorney's fees after they obtained a jury verdict against one of two defendants, Mrs. Repko, in their action under the Civil Rights Act of 1866, 42 U.S.C. § 1982 (1970). The other defendant below, John S. Repko, appeals[2] the denial of his application for an attorney's fee as a prevailing party.
 
 
 3
 Plaintiffs, black citizens, instituted this action for damages against the defendants, white citizens, alleging that the defendants refused to rent them an apartment owned by Mrs. Repko because they were black. Plaintiffs asserted two claims against each of the two defendants: one claim alleging discrimination in violation of 42 U.S.C. § 1982 (1970), and the other claim alleging a conspiracy in violation of 42 U.S.C. § 1985 (1970). At the close of plaintiffs' evidence the district court directed a verdict in favor of both defendants on plaintiffs' § 1985 conspiracy claim. It also directed a verdict for defendant, John Repko, on the § 1982 claim. The court allowed the § 1982 claim against defendant, Mrs. Repko, to go to the jury, and the jury found for plaintiffs on that claim. The jury awarded plaintiffs compensatory damages against defendant, Mrs. Repko, in the amount of $1,250, but awarded no punitive damages. No appeal was taken on the liability determinations. We therefore are concerned solely with the court's rulings on the applications for attorney's fees.
 
 
 4
 At the time he was retained, plaintiffs' counsel agreed with his clients that his fee would be limited to any amount awarded by the court. Plaintiffs' counsel applied for a fee of $3,850 based on 55 hours of legal service at $70 per hour.[3] The number of hours spent and the hourly rate appear to have been found reasonable by the district court and are not challenged, as such, on appeal.
 
 
 5
 The district court awarded the fee in accordance with the Civil Rights Attorney's Fees Awards Act of 1976. That Act reads, in pertinent part:
 
 
 6
 In any action or proceeding to enforce a provision of (42 U.S.C. § 1982) . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 7
 Pub.L.94-559, § 2, Oct. 19, 1976, 90 Stat. 2641.[4]
 
 
 8
 In determining plaintiffs' legal fee under the Awards Act the district court purported to follow the principles announced in Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3rd Cir. 1976) (in banc) (Lindy II ), and Merola v. Atlantic Richfield Co., 515 F.2d 165 (3rd Cir. 1975) (Merola II ). The court decided that the amount of the so-called lodestar (hours of service times hourly rate), "should be proportionate to the extent the plaintiffs prevailed in the suit." Hughes v. Repko, 429 F.Supp. 928, 932 (W.D.Pa.1977). It found that defendants prevailed on over two-thirds of the legal issues involved and proceeded to reduce the lodestar by about two-thirds to a net of $1,275.
 
 
 9
 The court also considered other factors which it felt should affect the lodestar, i. e., the quality of counsel's work and the contingency of success. It found the quality of the work to have been "good" but the case a "simple" one. It decided that the "contingency factor" was largely absent because plaintiffs' counsel showed his confidence of success by not entering into a contingent fee contract with his clients. Finally, the district court felt that plaintiffs' ability to pay their counsel was a factor to be considered in reducing the lodestar. The court so held because Congress had mandated recognition of that factor under the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq. (1970),[5] an act the court said provided a remedy similar to that accorded by § 1982.
 
 
 10
 Based on its consideration of the foregoing factors, the district court concluded that the reduced lodestar should be reduced further. It awarded plaintiffs' counsel a fee of $700.
 
 
 11
 Since plaintiffs attack the legal bases for the district court's determination, we are called upon to determine the legal correctness of the district court's rulings. This is so even though we review under an abuse of discretion standard.
 
 PREVAILING PARTY
 
 12
 We agree with the district court that the "lodestar" approach of Lindy II is a proper first step in calculating reasonable attorney's fees under the Act. Since plaintiffs here seek only the amount of the lodestar as a reasonable fee, we begin by analyzing the proper method by which to calculate the lodestar in such circumstances.
 
 
 13
 The first important question presented is what services are to be recognized in calculating the lodestar to be used in arriving at allowable compensation.
 
 
 14
 The district court stated that the plaintiffs prevailed on the discrimination claim against Mrs. Repko but lost on their conspiracy claim, on their § 1982 claim against Mr. Repko, on their claim for punitive damages against Mrs. Repko, and on their contention that the attorney's fee issue was for the jury. The court decided that since defendants prevailed on more than two-thirds of the issues litigated, the lodestar should be reduced by two-thirds.
 
 
 15
 Plaintiffs contend that the district court erred in reducing the basic lodestar without making a finding as to the time spent on the claims on which they prevailed. They also argue that the district court erred in failing to find whether any of the time spent on the claims on which plaintiffs did not prevail contributed to their success in obtaining the verdict. Defendant, Mrs. Repko, says the district court did not commit error.
 
 
 16
 We think experience in litigation teaches that there is no necessary percentage relationship between the number of claims and contentions presented in a lawsuit and the lawyer time spent on each. Consequently, the approach adopted by the district court does not have a rational basis to commend it. We therefore conclude that the district court's automatic reduction of the two-thirds of the lodestar on the basis of its reasoning was legally impermissible. What is the proper approach to the resolution of this most difficult issue?
 
 
 17
 The Civil Rights Attorney's Fees Awards Act of 1976 provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." As in cases assessing other court costs, it is not always easy to determine who is the "prevailing party," particularly where there are multiple claims and/or multiple parties, and where the petitioning party is not completely successful.
 
 
 18
 In order to apply the "prevailing party" language of the statute fairly, we think district courts should analyze the results obtained by the petitioning party on particular claims, regardless of the number of parties. Thus, in the context of an award sought after the entry of a final order,[6] a prevailing party on a particular claim is one who fairly can be found by the district court to have essentially succeeded on such claim, as "claim" is used in Fed.R.Civ.P. 10(b). We say "essentially succeeded" because in many cases a party may prevail on his basic claim but not on all aspects thereof. Given the spirit and purpose of the statute, we think our test allows the district courts to meet their obligations under the Act. Thus, we believe that plaintiffs here essentially prevailed on their § 1982 claim against Mrs. Repko, even though they were denied punitive damages and even though their request that the attorney's fee question be decided by the jury was rejected. The application of the "essentially successful" standard normally is left, of course, to the sound exercise of discretion by the district court in the first instance.
 
 
 19
 It is clear to us that the fee-petitioner cannot be treated as the prevailing party to the extent he has been unsuccessful in asserting a claim. This rule, of course, would be applicable regardless of the number of parties. Any other interpretation would run counter to the spirit of the Awards Act provision that attorney's fees should be awarded to the "prevailing" party.
 
 LODESTAR
 
 20
 Thus, in calculating the lodestar in connection with the successful claims, the district court should give the petitioner credit only for the hours of legal service reasonably supportive of such claims. In evaluating what hours are reasonably supportive, we believe Lindy II and Merola II require the district court to determine not only the number of hours actually devoted to the successful claims, but also whether it was reasonably necessary to spend that number of hours in order to perform the legal services for which compensation is sought. The burden of persuasion must rest on the petitioner to demonstrate to the court the number of hours attributable to the successful claim, and also to demonstrate that the number of hours so attributable was reasonably necessary to perform the work at issue.
 
 
 21
 Implicit in our analysis is the recognition that legal services fairly devoted to successful claims are compensable even though those very same legal services also supported the prosecution of the unsuccessful claims. In this case, for example, many of the same legal services required to prosecute the several claims against the two defendants might have been required in any event had the plaintiffs chosen only to pursue the claim that did prove successful, i. e., the § 1982 claim against defendant, Mrs. Repko. Consequently, an unanalyzed allocation of hours will not be permissible in arriving at the lodestar.
 
 
 22
 We next consider whether the district court committed error in reducing the lodestar because of its finding that the case was simple.
 
 
 23
 The district court reduced the lodestar because, inter alia, "of the simplicity of the factual issues involved." Hughes v. Repko, 429 F.Supp. 928, 932 (W.D.Pa.1977). We find no support in Lindy II or in Merola II for the proposition that the lodestar should be reduced because of the simplicity of the case. The simplicity of the issues involved should be reflected in the court's determination of the hours reasonably devoted to the successful claims, a determination that must be made in arriving at the lodestar itself. Any other approach would penalize attorneys regardless of the number of hours reasonably devoted to successful claims.
 
 
 24
 We similarly feel that the so-called contingency factor was not properly invoked by the district court to reduce the lodestar. We say this because the contingency factor under Lindy II is not to be employed to add to or reduce the lodestar. It is a factor to be considered only after the basic lodestar is determined, and even then may not be used to decrease the amount of the final fee award. In so concluding, we do not intend to suggest agreement with the district court's finding that the optimism of a plaintiff's counsel as to the outcome of the litigation is a proper consideration at any time in evaluating the contingency factor.
 
 
 25
 The district court held that the Civil Rights Attorney's Fees Awards Act of 1976 should be read in pari materia with the limitation in the Fair Housing Act of 1968 that a fee is to be allowed only if the court finds that the "plaintiff in the opinion of the court is not financially able to assume said attorney's fees." 42 U.S.C. § 3612(c) (1970). Accordingly, the district court reduced the lodestar to implement its belief that plaintiffs could pay part of the fee.
 
 
 26
 The Awards Act of 1976 is applicable explicitly to fees awarded in successful actions under 42 U.S.C. § 1982 (1970). It contains no test of ability to pay. Nor is there anything in the congressional history which suggests such a limitation. Furthermore, jurisdiction under the Fair Housing Act is not coextensive with jurisdiction under § 1982. Under these circumstances we think it would amount to judicial legislation to apply literally the limitation adopted by the district court. We decline so to interpret the Awards Act.
 
 
 27
 In refusing so to rely on the Fair Housing Act provision, however, we express no opinion on whether, or in what manner, a court may take into account ability to pay in exercising its discretion to award a reasonable attorney's fee under the Act. Since we are remanding this case for a recalculation of the fee, we believe it best to leave this issue for determination in the first instance by the district court. We emphasize, however, that the district court should take care to identify specifically any factors it considers when it evaluates the reasonableness of the award.
 
 
 28
 In this case, plaintiffs seek as a reasonable attorney's fee the amount of the lodestar. Because the district court erred in calculating the lodestar, it must recalculate it on remand. After it does so, the court must decide whether the lodestar itself, or some greater or lesser sum, is a reasonable fee. We do not wish to prejudge the factors that should be considered in arriving at a reasonable fee, though we note that the congressional history of the Awards Act offers some guidance in this area.[7] In many instances, however, the factors that are mentioned in the congressional history or in the case law in connection with the determination of "reasonableness" are factors that will have been considered adequately by a district court when it calculated the lodestar by determining the number of hours reasonably supportive of the successful claims, and when it fixed the reasonable hourly rate. We emphasize that the district court should identify the factors it considers in evaluating the reasonableness of the fee sought in order to permit meaningful review of its determinations.
 
 
 29
 We emphasize, as did the Congress that enacted the Awards Act,[8] that the district court should evaluate the fee to be awarded in light of the important substantive purposes of the Civil Rights Act, 42 U.S.C. § 1982 (1970), upon which plaintiffs relied.
 
 DEFENDANT'S APPEAL
 
 30
 Defendant below, Mr. Repko, seeks a reversal of the district court's denial of an attorney's fee to him even though he was the prevailing party as to both of plaintiffs' claims. The Supreme Court recently has stated, with respect to a prevailing defendant's claim for an attorney's fee under a similar statute, that a district court may, in its discretion, award attorney's fees to a prevailing defendant upon a finding that the plaintiff's action "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. E. E. O. C., 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978).
 
 
 31
 The district court found that plaintiffs proceeded in good faith on the advice of counsel. The court also found that the action was not brought to harass, embarrass, or abuse defendants. Given these findings, which are not attacked, we think they negate any possible finding of the type required by the Supreme Court in such cases before a prevailing defendant may recover an attorney's fee.
 
 
 32
 The order of the district court, to the extent it allows a fee for plaintiffs' counsel, will be vacated and the matter remanded for further proceedings consistent with this opinion.
 
 
 33
 To the extent the order denies defendant, Mr. Repko, an attorney's fee, it will be affirmed.
 
 
 34
 ROSENN, Circuit Judge, concurring.
 
 
 35
 I join Chief Judge Seitz in his opinion and agree with him that the critical first step in fixing a reasonable attorney's fee under the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L.94-559, § 2, Oct. 19, 1976, 90 Stat. 2641, codified at 42 U.S.C.A. § 1988 (West Supp.1977), is the determination of the "lodestar" (reasonable hours of service times reasonable hourly rate). I write only to emphasize that once that figure is ascertained, the district court may also in its discretion, adjust the final fee award to reflect the limited benefits produced by the litigation.
 
 
 36
 In Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) ("Lindy I "), we set forth standards and guidelines governing the award of attorney's fees in cases in which an attorney's actions lead to the creation of an equitable fund. We later implemented and refined these formulations in Lindy II, 540 F.2d 102 (3d Cir. 1976) (en banc), concluding: (1) that a determination of the "lodestar" amount is the proper preliminary calculation in setting a fee, and (2) that the "lodestar" may be adjusted to account for two other factors the contingent nature of success for the action and the quality of the attorney's work. 540 F.2d at 112. We also specifically indicated that in making an adjustment for quality work the district court could consider the actual damages recovered by verdict or settlement. Id. at 118.[1]
 
 
 37
 Although the standards we enunciated in Lindy form the fundament for an award of attorney's fees, it is important to state that the award flowing from that formulation may, under certain circumstances, be subject to adjustment upward or downward. Lindy involved a recovery fund of approximately 25 million dollars and the attorneys' fee claims not the amount allowed amounted to only a small fraction of the fund for distribution. In the instant case, however, we are not concerned with an equitable fund for distribution, but with a statutory award for services rendered in connection with civil rights litigation a distinction of some importance, as the statutory right to receive an attorney's fee has been legislated in numerous situations.[2] In an equitable fund case, the outer limits of any claim for fees must perforce be the amount of the recovery. This limitation, however, is not necessarily present in a fee award made pursuant to a statutory provision.
 
 
 38
 The Civil Rights Attorneys' Fees Awards Act, recognizing that fee awards are an essential remedy "if private citizens are to have a meaningful opportunity to vindicate important Congressional policies," provides for an allowance by the court "in its discretion" of a "reasonable attorney's fees." If the plaintiff prevails, regardless of whether he prevails slightly or greatly, he is entitled to counsel fees. I believe that the district court in vindicating Congress' policy to award a reasonable attorney's fee has the flexibility to consider not only the extent to which the prevailing party's action furthered the civil rights policy of the United States, but also whether the attorney's time and expense in obtaining a favorable verdict were reasonable, in light of the actual amount recovered.
 
 
 39
 An analysis of the instant case illustrates the need for such flexibility for the district court in adjusting the "lodestar" when setting a fee award. This action affects the plaintiffs only in a very limited manner, a fact which the jury grasped and reflected in its award. By the time the case had been instituted, the plaintiffs had moved to another city and found living quarters elsewhere. Consequently, the jury returned a verdict against the defendant for only $1,250 compensatory damages and awarded no punitive damages. Plaintiffs claimed only that the defendants had discriminatorily refused to rent them an apartment, an isolated act of discrimination by a non-commercial property owner. The verdict in their favor does not correct across-the-board discrimination affecting a large class. It affects only the plaintiffs and, as I have indicated, in a very limited manner.
 
 
 40
 Following calculation of the lodestar, taking into account the reasonable hours attributable to the award in a law suit, I believe that the district court has further flexibility "in its discretion" to adjust the "lodestar" in view of the damages awarded and the defendants' ability to pay. An attorney, depending solely upon a statutory discretionary fee award, who undertakes litigation in which the potential damages are small, may run the risk that his fee will not be full compensation for his labors. There may be cases in which the damages awarded are slight, but which nonetheless serve important governmental policies. In such cases, if the attorney's hours are reasonable, the court may balance the small verdict with the important benefits produced by the litigation. However, for the ordinary case, once a district court has fixed the "lodestar" it should not be precluded from a downward adjustment of the fee, when, in its discretion, considering the potential damages available, the amount actually recovered, and the minor nature of the defendant's misconduct, the court determines that the litigation has produced minimum benefits. See Lindy II, supra, 540 F.2d at 112, quoting, Merola v. Atlantic Richfield, Co., 515 F.2d 165, 168-69 (3d Cir. 1975) ("Merola II ") (the court may "reduce the objectively determined fee where the benefit produced does not warrant awarding the full value of the time expended").
 
 GARTH, Circuit Judge, concurring:
 
 41
 I am in general agreement with the opinions of Chief Judge Seitz and Judge Rosenn. However, because I am not certain that the actual operation by which a district court judge is to proceed in awarding attorney's fees in this nonfund context is set out with the particularity I deem essential, I have undertaken to set forth my views. As I understand it, the process by which the district court awards an attorney's fee under the Civil Rights Attorney's Fees Awards Act starts with the lodestar formulation set forth in our decision in Lindy I.[1] The first step has to do with the "number of hours" and hourly rate components of the lodestar. The burden of establishing these components rests on the party seeking the fee. Chief Judge Seitz in his opinion for the majority has admirably set forth the manner by which the "number of hours" component is to be determined. See Maj.Op. at 486-487.
 
 
 42
 Following the calculation of the lodestar (number of reasonably necessary hours times hourly rate), the district court is then obliged to make a determination as to whether an additional amount should be added because of the contingent nature of the claim. In this respect, the district court, if not impressed with the contingent nature of the case, would add nothing to the lodestar amount. However, neither would the district court subtract any amount from the lodestar on account of the non-contingency of the case. To reduce the fee award in a case where there is a strong likelihood of success makes little sense. Such a reduction unfairly penalizes the attorney who is employed to prosecute a case where the constitutional or statutory violation is clear. Moreover, the defendant is penalized where the case against him is weak.[2]
 
 
 43
 After this latter determination has been made the district court would also be obliged to consider whether in its discretion it should add to or reduce the figure so determined to take into account the quality of the attorney's performance. Lindy II.[3] The result so calculated lodestar as adjusted for contingency and quality might appropriately be labelled the "Lindy amount."
 
 
 44
 In a case such as this one, which does not involve a fund,[4] the district court, once having determined the Lindy amount, would then be required to consider whether that amount should be adjusted so as to further the "important substantive purposes" of the Civil Rights Act,[5] 42 U.S.C. §§ 1981-1995, and to assure that the final fee award is reasonable.[6] In this connection, the district court, in my view, is at liberty to make this "post-Lindy discretionary adjustment" based on any rational factors that are relevant to the particular case. As Chief Judge Seitz has indicated, those factors must be articulated. In my opinion, they must also be supported by the record. Moreover, when a post-Lindy discretionary adjustment is involved, as it is here, the party seeking the adjustment would have the burden of proof with respect to the adjustment which it seeks. Generally, the plaintiff will be seeking an upward adjustment and thus must bear that burden of proof, while the defendant would be seeking a downward adjustment, thus assuming that burden of proof. Of course, this "line-up" would vary with the particular characteristics of the case.
 
 
 45
 Relating this process to the award in the instant case, as I understand Chief Judge Seitz's majority opinion, the same $700 award heretofore made and which we have now vacated, could very well be awarded again and affirmed, if that award survives the process which I have described above and if all the factors leading to that award are properly articulated.[7]
 
 
 46
 In sum, the district court must determine the number of hours actually worked which were "reasonably necessary" and which contributed to "essentially successful" claims. It must then multiply those hours by a reasonable hourly rate in order to calculate the lodestar. The court must then consider whether to add to the lodestar because of the contingent nature of the case. It must also consider whether to augment or reduce the lodestar because of the quality of advocacy. In non-fund cases the amount so determined the "Lindy amount" is subject to an upward or downward "post-Lindy discretionary adjustment." This adjustment takes into account all factors relevant to the reasonableness of the award, as well as factors derived from the substantive purposes of the statute under which the fee is awarded. These factors, of course, must all be articulated and supported by the record.
 
 
 47
 As I stated at the outset, my only purpose in writing this concurring opinion as a supplement to Chief Judge Seitz's excellent majority opinion is to explicate my view as to the steps a district court judge must take to comply with the mandate of the Civil Rights Attorney's Fees Awards Act and our attorney's fee decisions. I have always felt that this court owes a particular responsibility to the district court to specify in detail our precise requirements. It is in this spirit that I have undertaken to enunciate my understanding of the attorney fee award process.
 
 
 
 [1]
 Although plaintiffs' attorney joined in the notice of appeal, we shall treat this as plaintiffs' appeal only
 
 
 [2]
 Defendant, Mrs. Repko, also joined in her husband's notice of appeal. We ignore that fact because only defendant, Mr. Repko, filed a petition for counsel fees, and the order of the district court is directed only to his application
 
 
 [3]
 Plaintiffs also sought $222.33 for costs advanced. This item is not in issue
 
 
 [4]
 The district court calculated the fee to be awarded in accordance with the Civil Rights Attorney's Fees Awards Act even though that Act was passed while this case was pending in the district court. Neither party on appeal challenges the district court's decision to apply the Awards Act. We therefore do not consider whether the Act properly was given retroactive effect in this case
 
 
 [5]
 "The court . . . may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: Provided, That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees." 42 U.S.C. § 3612(c) (1970)
 
 
 [6]
 We are not called upon in this case to determine in what circumstances an award of attorney's fees under the Awards Act prior to the entry of final judgment might be proper. See H.Rep.No.94-1558, 94th Cong., 2d Sess. 8 (1976); Bradley v. School Board, 416 U.S. 696, 722 n. 28, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)
 
 
 [7]
 For example, the House Judiciary Committee Report stated:
 The third principal element of the bill is that the prevailing party is entitled to "reasonable" counsel fees. The courts have enumerated a number of factors in determining the reasonableness of awards under similarly worded attorney's fee provisions. In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), for example, the court listed twelve factors to be considered, including the time and labor required, the novelty and difficulty of the questions involved, the skill needed to present the case, the customary fee for similar work, and the amount received in damages, if any. Accord: Evans v. Sheraton Park Hotel (164 U.S.App.D.C. 86), 503 F.2d 177 (1974); see also United States Steel Corp. v. United States, (519 F.2d 359 (3d Cir. 1975)).
 H.Rep.No.94-1558, 94th Cong., 2d Sess. 8 (1976). Accord, S.Rep.No.94-1011, 94th Cong., 2d Sess. 6, reprinted in (1976) U.S.Code Cong. & Admin.News, 5908, 5913.
 
 
 [8]
 The Report of the Senate Judiciary Committee stressed that, in passing the Awards Act in reaction to the decision in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Congress was recognizing that the "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."
 In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.
 S.Rep.No.94-1011, 94th Cong., 2d Sess. 2, reprinted in (1976) U.S.Code Cong. & Admin.News, 5908, 5910. Accord, H.Rep.No.94-1558, 94th Cong., 2d Sess. 1 (1976).
 
 
 [1]
 In adjusting the "lodestar," we stated that the district court may consider, inter alia:
 
 
 [1]
 The result obtained by verdict or settlement, evaluated in terms of (a) the potential money damages available to the class member, i. e., a comparison of the extent of possible recovery with the amount of actual verdict or settlement; (b) the benefit monetary or non-monetary conferred on the class, i. e., permitting the court "to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested . . . ."
 Lindy Brothers, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 118 (3d Cir. 1976) (en banc) ("Lindy II ") (citation omitted).
 
 
 [2]
 Presently at least seventy-five federal statutes, either "authorize or mandate courts to award attorneys' fees as part of the relief granted." Berger, Court Awarded Attorneys' Fees: What Is Reasonable?, 126 U.Pa.L.Rev. 281, 282 (1977)
 
 
 [1]
 Lindy Bros. Bldrs. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973) (Lindy I )
 
 
 [2]
 In Prandini v. National Tea Co., 557 F.2d 1015, 1020 (3d Cir. 1977), Judge Weis stated:
 We are aware of the differences in rationale underlying the awards of fees from a fund produced for the benefit of a class and those provided by statute. In the former case, the court exercises its equitable jurisdiction over the relationship between an attorney and his amorphous client, and factors which would appropriately have influenced the fee arrangement made between private parties, such as the contingency of litigation, are relevant. In the latter case, the statutory fee is often a part of the defendant's penalty for violating the applicable law. Contingency may be of little significance in that situation if the result is to give a smaller fee to the plaintiff's lawyer who recovers from a defendant in flagrant violation than the attorney who succeeds in establishing liability in a very close case. The contingency factor would be less where the liability is easily proved than where it is questionable. Hence, the penalty fastened on the defendant would vary in inverse proportion to the strength of the case against him.
 
 
 [3]
 Lindy Bros. Bldrs. of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 114-15 (3d Cir. 1976) (in banc) (Lindy II)
 
 
 [4]
 See, e. g., Lindy I; Lindy II; Merola v. Atlantic Richfield Co., 493 F.2d 292 (3d Cir. 1974) (Merola I); Merola v. Atlantic Richfield Co., 515 F.2d 165 (3d Cir. 1975) (Merola II); Estien v. Christian, 507 F.2d 61 (3d Cir. 1975); Walter v. Netherlands Mead N.V., 514 F.2d 1130 (3d Cir. 1975)
 
 
 [5]
 The award granted in this case was pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L.94-559, § 2, 90 Stat. 2641, 42 U.S.C. § 1988. Of course, in the case of attorney's fees awarded under other statutes, the substantive purposes of those acts must be factored into the fee award
 For example, in an award under the Civil Rights Act, the district court should take into account the fact that the Civil Rights Attorney's Fees Awards Act is designed to give persons who are victims of civil rights violations effective access to the judicial process. See H.R.Rep.No.94-1558, 94th Cong., 2d Sess. 1 (1976). The Act is also intended to enhance the enforcement of the Civil Rights Act, which depends heavily on private enforcement, and to grant private citizens "a meaningful opportunity to vindicate important Congressional policies which these laws contain." S.Rep.No.94-1011, 94th Cong., 2d Sess. 2, reprinted in 5 (1976) U.S.Code Cong. & Admin.News 5908, 5910. Thus, recognizing the "private attorney general" policy behind the Awards Act, the district court might consider, inter alia: the importance of the constitutional right and congressional policy which has been vindicated; the number of citizens who have been benefited or whose rights have been vindicated (either as class members or through stare decisis ); the extent of the constitutional violation which has been remedied (i. e., how widespread or pervasive was the civil rights violation); whether the attorney has successfully advanced a novel theory or interpretation; the extent to which the public interest has been served. See Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).
 
 
 [6]
 The court might consider, for example, the customary fee for similar work, the amount received in damages, fee awards made in similar cases. See, e. g., Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1975); H.R.Rep.No.94-1558, 94th Cong., 2d Sess. 8 (1976), quoted at Maj.Op. at 488 n. 7. The twelve factors enumerated in Johnson, of course, are not exclusive. Moreover, as Chief Judge Seitz properly points out, certain of these factors will have been considered in determining the lodestar components and in calculating the contingency and quality adjustments, if any. See Maj.Op. at 488
 
 
 [7]
 Of course, a "post-Lindy discretionary adjustment," just as all attorney's fee awards, is reviewable by an abuse of discretion standard