Joseph M. SKOMORUCHA, Plaintiff,

v.

**WILMINGTON HOUSING AUTHORITY
and Earl Phillips, Defendants.**

Civ. A. No. 80–447.

United States District Court,
D. Delaware.

July 20, 1981.

Bayard Marin, and Bruce L. Hudson of Marin & Hudson, Wilmington, Del., for plaintiff.

Clifford B. Hearn, Jr., Wilmington, Del., for defendants.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff, successful in his civil rights action, now moves for an award of attorneys' fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 ("Awards Act"). Plaintiff's motion was accompanied by an affidavit detailing the time spent on the case. A hearing was held on June 16, at which time defendants had an opportunity to raise questions concerning specific aspects of the petition. Following the hearing, plaintiff supplied additional details by letter memorandum, at the Court's request.

The point of departure in the attorneys' fee analysis is calculation of the "lodestar." *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("*Lin-*

*dy I*"). This involves first determining the total number of hours spent by plaintiff's attorneys, and then deciding on a reasonable hourly rate. These two, when multiplied together, yield the lodestar amount. Not all hours spent on the case are to be counted, however. Under *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978), only those hours that were "reasonably supportive" of plaintiff's *successful* claims are to be counted. In order to determine how much of plaintiff's attorneys' time comes within this category, it is necessary to review the history of this litigation.

■ The factual background of the case has been set out in a previous opinion of this Court, *see Skomorucha v. Wilmington Housing Authority*, 504 F.Supp. 836, 838 (D.Del.1980), and will therefore not be recited again here. Plaintiff's complaint, filed in September, 1980, alleged that his discharge by the Wilmington Housing Authority violated his right to equal protection of the laws under the Fourteenth Amendment, as well as his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The complaint further alleged that the discharge violated plaintiff's right of free speech and his Fourteenth Amendment due process rights. Suit was brought pursuant to 42 U.S.C. § 1983 and Title VII.

On defendant's motion to dismiss, the Court dismissed the Title VII claim for failure to exhaust administrative remedies, and ordered plaintiff to plead the First Amendment claim with ɡ. ater specificity. Plaintiff amended his conᴸ laint pursuant to the Court's ruling, and subsequently moved for a preliminary injunction. After a hearing, the Court found that plaintiff was unlikely to succeed on any of his claims at trial, and that plaintiff would not be irreparably injured by denial of the relief sought, and therefore denied the motion. *See id.* at 841.

The case came to trial in February, 1981. At the close of plaintiff's case, defendants moved for a directed verdict on the equal protection, due process, and free speech claims. The Court granted the motion as to the free speech claim. At the conclusion of the trial, the jury rendered a verdict in favor of plaintiff on the equal protection and due process claims, and awarded $27,000 in compensatory damages. In addition, the jury awarded plaintiff $10,000 in punitive damages against each of the defendants. After trial, the Court denied defendants' motion for a new trial or judgment notwithstanding the verdict.

Defendants contend that the time that plaintiff's attorneys spent in connection with the Title VII claim, the First Amendment claim, and the motion for injunctive relief should not be included in the lodestar calculation, for plaintiff did not prevail on these claims. On the authority of *Hughes v. Repko, supra,* the Court agrees as to the First Amendment and Title VII claims.[1] However, the issue is more difficult as to the hours spent on the motion for injunctive relief. Though the Court denied the motion, plaintiff subsequently prevailed on all the claims raised at the hearing, with the exception of the free speech claim. It is clear that the time spent in preparation for the hearing reduced the time required for trial preparation on those claims. Moreover, the testimony elicited by plaintiff's attorneys at the hearing was, in the Court's view, critical to plaintiff's success at trial. Since the claims on which he prevailed all pertained, broadly speaking, to the reasonableness of plaintiff's termination and the means by which it was effected, defendant Phillips's motivation in discharging plaintiff was a central issue; and plaintiff's attorneys used Phillips's testimony on that issue at the hearing to impeach Phillips's testimony at trial. Finally, the Court notes that plaintiff's attorneys have claimed only eighteen hours' work in connection with the hearing. Because this work was "reasonably supportive" of plaintiff's successful claims, *see Hughes v. Repko, supra,* at 487 (3d Cir. 1978), the Court will allow it as part of the lodestar calculation.

---

1. The Court, on the same basis, disallows the time spent by plaintiff's attorneys at the Department of Labor Conference and the unemployment hearing. *See* Letter of Bruce L. Hudson to the Court, June 22, 1981.

As set out in the affidavit filed by plaintiff's attorneys, the total number of hours spent on the case by Bruce L. Hudson was 176.9 hours, with an additional 3.8 hours spent on the fee application. *See* Appendix A. Mr. Hudson's partner, Bayard Marin, spent a total of 28.1 hours on the case, and an additional .8 hours on the fee application. *Id.* The time spent on the First Amendment and Title VII claims, not to be included in the lodestar calculation, totalled 6.9 hours for Mr. Hudson and 3.1 hours for Mr. Marin. *See* Letter of Bruce L. Hudson to the Court, June 22, 1981. Therefore, including fee application time, Mr. Hudson expended a total of 173.8 hours in support of his client's successful claims, and Mr. Marin a total of 25.8 hours.[2] The Court finds this number of hours to be reasonable for the legal services as to which plaintiff's attorneys seek compensation.

The next issue concerns the reasonableness of the hourly rate requested by petitioners. Mr. Hudson's rate throughout the pendency of the case has been $50/hour, while Mr. Marin's rate has been $75/hour. The Court considers these rates to be reasonable for the Wilmington area, and approves their use in the lodestar calculation. On the basis of the hours expended at these rates, the Court calculates the lodestar in this case to be $10,625.

The final question for the Court on attorneys' fees is whether adjustment of the lodestar is warranted in view of the "contingent nature of success" and the quality and difficulty of the work. *See Lindy I, supra,* at 168; *Lindy Brothers Builders, Inc. v. American Radiator & Sanitary Corp.,* 540 F.2d 102, 113 (3d Cir. 1976) ("*Lindy II* "). Defendants contend that the lodestar should be reduced because plaintiff's attorneys did not take the case on a contingency basis. Plaintiff was billed on an hourly basis, and total charges to plaintiff were roughly $10,000, all but $3,300 of which he has paid. In the Court's view, defendants' argument, that the lodestar should be reduced by the amount of the charges, misconstrues the purpose of the Awards Act. The legislative history sets out the statute's rationale:

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, . . . then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S.Rep.No.94–1011, 94th Cong., 2d Sess. at 2, *reprinted in* [1976] *U.S.Code Cong. & Admin.News* 5908, 5910. *Accord, H.Rep.No. 94–1558, 94th Cong., 2d Sess.* at 1 (1976). Pursuant to the statute, the award is made to the prevailing party, not to the attorneys.

The Third Circuit has construed this statute as authorizing an award of reasonable attorneys' fees to plaintiffs, without an inquiry into plaintiffs' out-of-pocket expenditures for legal fees. *See Hughes v. Repko, supra.* The nature of the fee arrangement is, however, one of the factors to be taken into consideration in determining a reasonable fee award, *see, e. g., id.* at 488 n. 7; *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir. 1974), though its relevance is limited to whatever guidance it might provide as to the parties' own estimation of a reasonable fee in the case. *Id.* This Court sees no reason why it should be barred from awarding a fee larger than the fee set by the parties, if it determines, after consideration of all the appropriate factors, that the fee should reasonably be higher. *But cf. Johnson v. Georgia Highway Express, Inc., supra* (no award greater than fixed fee under Title VII). In a contingency fee case, for example, the award is not determined by the amount that plaintiff actually paid his attorneys from his damage award. *See, e. g., Lindy I, supra,* at 168 n. 11. In view of the fact that plaintiff's counsel might have

---

**2.** Defendant has raised the question whether there was any duplication of effort by Marin and Hudson. *See* Letter of Clifford B. Hearn, Jr. to the Court, June 12, 1981 at 2. Plaintiff's counsel contend that they both attended hearings or conferences only when there was some special reason for both to be in attendance, and the Court so finds.

taken into account plaintiff's hardship in negotiating a fee, it would be contrary to the statutory scheme automatically to limit the fee award to the level of the fee negotiated by the parties.

In the instant case, there is ample evidence that plaintiff's counsel sought to minimize legal fees in view of plaintiff's financial situation. *See, e. g.*, Letter from Bruce L. Hudson to the Court, July 2, 1981; Hudson Affidavit ¶ 17. Moreover, the discrepancy between the amount plaintiff was charged for legal services and the amount of the lodestar is slight. In view of all the evidence, the Court deems the lodestar to be reasonable compensation for the services performed.

Plaintiff contends that an increase in the lodestar is warranted in view of the speed with which the action was brought to trial, the legal and factual complexity of the case, and the result obtained. In the Court's view, these considerations are adequately reflected in the hourly rates fixed above,

and the Court therefore declines to make any adjustment to the lodestar. *Cf. Walker v. Robbins Hose Co. No. 1, Inc.*, 622 F.2d 692, 694 (3d Cir. 1980) (no adjustment to lodestar); *Morris v. Board of Education*, C.A. 4684, slip op. at 3 (D.Del. Dec. 29, 1975) (same).

Finally, plaintiff requests that costs be taxed in the sum of $1,234, pursuant to 28 U.S.C. §§ 1920, 1921. The major expenses petitioned for are deposition expenses. *See* Appendix B. Given plaintiff's counsel's extensive use of depositions at trial, the Court deems the transcript costs to be necessary expenses, with the exception of the cost of the unemployment hearing transcript, which the Court disallows. Of the remaining expenses claimed, the Court finds that all were necessary except the witness fee paid to Bruce Leson, a witness whom plaintiff failed to call to testify. The Court awards costs to plaintiff in the sum of $1,119.

APPENDIX A

The following chart of attorneys' time spent on the case is taken from the Hudson Affidavit of March 13, 1981:

|  | BLH * | BM |
|---|---|---|
| Conferences with plaintiff's attorneys working on the case, with law clerks to discuss strategy, and legal research; conferences with defense counsel. | 16.1 | 1.1 |
| Preparation of pleadings, motions and correspondence. | 10.1 | |
| Telephone conferences, misc. | 3.5 | .1 |
| Legal research prior to trial. | 8.4 | 18.6 |
| Pre-trial discovery and preparation; take and abstract depositions; inspect documents and defendant's answers to interrogatories; prepare plaintiff for his deposition. | 4.2 | |
| Trial preparation: review depositions, prepare jury prayers, prepare opening statement and final argument, prepare testimony of all plaintiff's witnesses, prepare cross-examination of defense witnesses, prepare plaintiff to testify, prepare pre-trial order and trial exhibits. | 59.4 | 1.2 |
| Trial, pre-trial conferences and presentation of motions. | 61.2 | 6.9 |
| Hearings. | 14.0 | 0.2 |
| Total | 176.9 | 28.1 |
| Preparation of attorneys' fee motion and affidavit as of 3/12/81. | 3.8 | .8 |

* BLH refers to Bruce L. Hudson; BM to Bayard Marin.

## .APPENDIX B

The following list of litigation expenses is taken from the Hudson Affidavit of March 13, 1981:

Out-of Pocket Costs

| | |
|---|---:|
| Copies (160 pp.) 8/22/80 and 8/24/80 Memos for Wilmington Housing Authority Board Hearing | $ 12.00 |
| U.S. District Court Filing Fee | 60.00 |
| Charles Iuliano, court reporter, grievance hearing | 38.50 |
| Leonard Dibbs, court reporter (Pre.Inj.Hearing) | 614.00 |
| Begley & Quinn, court reporter (Unemp.Hearing) | 85.50 |
| Varello, White & Varello (Depositions) | 238.00 |
| U.S. Marshall, service fee | 9.24 |
| Israel Floyd, witness fee (deposition) | 30.00 |
| Israel Floyd, witness fee (trial) | 30.00 |
| Glover Jones, witness fee (trial) | 31.50 |
| Sally Julian, witness fee (trial) | 36.75 |
| Bruce Leson, witness fee (trial) | 30.00 |
| U.S. Marshall, subpoena fee | 16.68 |
| U.S. Marshall, subpoena fee | 2.00 |
| Total Costs | $ 1,234.17 |