Madeline L. COHEN

v.

COMMUNITY COLLEGE OF PHILADELPHIA

and

Monica SOKOLSKY

v.

COMMUNITY COLLEGE OF PHILADELPHIA

and

Jan S. COWARD

v.

COMMUNITY COLLEGE OF PHILADELPHIA.

Civ. A. Nos. 75–2133 to 75–2135.

United States District Court, E. D. Pennsylvania.

Aug. 7, 1981.

Richard D. Malmed, Philadelphia, Pa., for plaintiff.

Howard R. Flaxman, Philadelphia, Pa., for defendant.

## OPINION

. DITTER, District Judge.

These three actions were brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by plaintiffs, Madeline L. Cohen, Monica Sokolsky, and Jan S. Coward, who were employed as teachers by the defendant Community College of Philadelphia (CCP). Plaintiffs claimed that they were individually discriminated against because they were each denied employment solely on account of their race. After suit was commenced, plaintiffs Sokolsky and Coward amended their complaint and charged that following their denial of full-time employment, they were also refused part-time positions at CCP in retaliation for their efforts to vindicate their rights under Title VII. The cases were consolidated for trial without jury. I subsequently found that plaintiffs had failed to establish a prima facie case of racial discrimination and therefore denied the relief initially sought in all respects. I did, however, find that defendant retaliated against Sokolsky and Coward for the charges raised in their complaint. 484 F.Supp. 411 (E.D.Pa.1980). Sokolsky and Coward ultimately settled the retaliation claim with defendant for $48,000. and $29,500., respectively. Presently before me is plaintiffs' petition for counsel fees, which was supplemented and supported by an evidentiary hearing.

■ Counsel fees may be awarded in employment discrimination cases to a "prevailing party," that is, one who "essentially succeeds in obtaining the relief he seeks in his claims on the merits." *Swietlowich v. County of Bucks*, 620 F.2d 33, 34 (3d Cir. 1980). Cohen argues that she was a prevailing party in this action because she was rehired by defendant on a full-time basis and that her rehiring was effectively the result of this lawsuit. Defendant strongly disputes her assertion, claiming Cohen did not establish a prima facie case of racial discrimination and, further, that there was no causal relationship between this lawsuit

and defendant's decision to rehire Cohen. I agree. Cohen must establish that she was a prevailing party in this action. She has simply failed to do so. Plaintiffs have submitted no evidence to support their contention and I have found nothing in the record to support the view that Cohen was rehired by defendant because of this action. Thus, I hold that Cohen was not a prevailing party.

Sokolsky and Coward argue they were prevailing parties because they were successful on their retaliation claims and the amount they ultimately received in settlement varied only slightly from that which they could have obtained had they been successful on all claims. Defendant does not dispute that Sokolsky and Coward were prevailing parties on the retaliation claim but contends they were not prevailing parties for any other claim. Again, I agree with defendant's position. A party's ultimate monetary recovery on a particular issue is not, as plaintiffs assert, determinative as to whether or not he prevailed on all his claims. This is especially so in this case because the substantial monetary settlement of the retaliation claim may have been in exchange for Sokolsky's and Coward's foregoing any rights they had to reinstatement. Moreover, *Hughes v. Repko*, 578 F.2d 483, 486–87 (3d Cir. 1978), directs that I examine the results obtained by the petitioning party on particular claims since "the fee-petitioner cannot be treated as the prevailing party to the extent he has been unsuccessful in asserting a claim." Sokolsky and Coward clearly were unsuccessful in asserting their claims of racial discrimination. Thus, they cannot be treated as prevailing parties on their initial claims.

In this circuit, the calculation of an award of attorney's fees is governed by the dictates of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*), and 540 F.2d 102 (3d Cir. 1976) (en banc) (*Lindy II*), and its progeny. Under these standards, the first item to be determined is the "lodestar," which is calculated by multiplying the hours of service times the hourly rate.

The "hours of service" factor requires a determination of the number of hours actually devoted to claims that ultimately prove successful. Credit is given only for hours "reasonably supportive" of such claims. *Hughes, supra*, 578 F.2d at 487. In support of their petition, plaintiffs' counsel submitted an affidavit with a schedule attached which lists all hours he spent in this case. This schedule is attached to this opinion as Appendix A. Counsel did not allocate his hours between successful and unsuccessful claims but, instead, insisted that since the settlement of the retaliation claim produced the equivalent of total success, he should be compensated for all hours devoted to this case. This reasoning runs contra to the clear mandate of *Lindy* and *Hughes*. Cohen was not successful on any of her claims. Hence, counsel can be entitled to no fees for time spent on her behalf. Sokolsky and Coward were successful on the retaliation portion of their respective cases and unsuccessful on the balance. The retaliation portion of the case was merely an adjunct to the major thrust of this lawsuit which alleged racial discrimination. Therefore, only a very reduced amount of hours can properly be allocated to the claim for retaliation. Since the schedule of time spent by counsel submitted to the court did not allocate between hours devoted to the successful and unsuccessful claims, I face the challenging task of doing this analysis myself. Obviously, I can do no better than the records permit—and they are casual, contradictory, and confusing. I bear in mind, however, that there may have been hours spent on the unsuccessful claims that were also fairly attributable to the successful claims. Although this burden is somewhat lessened by the fact that Cohen's portion of the case dealt with the activities of the art department while the other plaintiff's portion concerned events of the music department, the task is, nevertheless, difficult. Moreover, I must also remember that *Hughes* states that the burden of persuasion clearly rests on the petitioner to demonstrate which hours were fairly devoted to the successful claims.

Initially, I must deduct from the fee petition those hours in which there is either not complete and exact itemization or where the claims are not specific enough to meet the requirements imposed by *Lindy I* and *Lindy II*. *See also Vecchione v. Wohlgemuth*, 481 F.Supp. 776, 786 (E.D.Pa.1979). This will include the entries for August 9, 1976 (.5 hours), March 18, 1977 (.3), March 31, 1977 (.3), July 26, 1977 (1.5), July 27, 1977 (3.5), August 5, 1977 (.5), September 1, 1977 (2.0), and September 15, 1977 (3.5). I must also reduce those hours that were claimed to be devoted for trial on days when there was no trial: February 6, 1977 (7.5), February 7, 1978 (7.5), and February 13, 1978 (7.5). Although plaintiff's counsel claimed that he devoted 7.5 hours for trial time on February 8, 1978, when in fact there was no trial on that date, I will accept his testimony at the fee petition hearing that he spent the day with his clients and some of the witnesses going over the facts. (Tr. 21).

My next step will be to deduct those hours that pertained solely to Cohen's portion of the case or to the efficacy of CCP's affirmative action plan since she was not a prevailing party and none of the hours spent on her aspect of the case or on the affirmative action portion aided in proving retaliation against Sokolsky and Coward. This will include a deduction of one third of the hours spent in July, 1976, November 5, 1976, and December 15, 1976 (total .6), since the entries totalling two hours include the interviewing of all three plaintiffs. Next to be deducted from the fee petition are the approximately 2.5 hours that were spent deposing Cohen on January 3, 1977. Similarly, the hours devoted to Bobbye Burke's deposition, April 2, 1977 (5.0) must be deducted because she was a member of the art department, not the music department. On May 8, 1977, 2 hours were spent answering interrogatories on Cohen's portion of the

case only and these hours are likewise to be deducted. On July 7, 1977, the deposition of Henry Swezey was taken. Since his testimony concerned only the affirmative action program at CCP, the 1.5 hours devoted to his deposition must be deducted. Also to be deducted is the testimony at trial of Swezey (2/29/78; 7.5 hours); Cohen and Robert Evans, a teacher in the art department at CCP (2/10/78; 5.75),[1] Burke (2/14/78; 3.75), Jacqueline Brown, the art history teacher who was hired ahead of Cohen (2/20/78; 1.5), Joy Simpson, a music teacher hired instead of Sokolsky and Coward but who had left CCP at the time the music hiring committee met and voted not to offer employment of any kind to Sokolsky and Coward, and Jeff Donaldson, an expert retained by CCP on African art (2/22/78; 3.25). I also reduce the fee petition for the hours spent on February 24, 1978, when Burke and Cohen testified again (.75). Finally, I deduct those hours spent by plaintiffs' counsel preparing a post-trial brief concerning the effect of the Supreme Court's decision in *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), which had no bearing on the retaliation issue. Plaintiffs' counsel testified at a fee petition hearing that he spent a considerable period of time in November, 1978, on this brief. (Tr. 10–11). The schedule he submitted states he spent 33 hours preparing a brief in that month and therefore this time will be deducted from the total.

Having deducted times that were devoted solely to the claims that proved unsuccessful, *i. e.*, Cohen's portion of the case and the challenge to CCP's affirmative action plan, and having deducted times where itemization was not specific enough, 185.65 hours remain. This figure represents hours that overlap between hours spent on successful and unsuccessful claims. They were hours spent in developing all of the various claims

---

1. Plaintiffs' counsel stated he devoted 7.5 hours on February 10, 1978, for the trial testimony of Cohen, Evans, and Sokolsky. An examination of the trial transcript of that particular date reveals that of the 152 pages of trial testimony, 118 pages was devoted to the testimony of

Cohen and Evans. Therefore, approximately 5.75 hours were devoted to claims that ultimately proved unsuccessful. I will utilize this procedure on other trial dates where testimony on successful and unsuccessful claims overlap.

set forth by plaintiffs. Certainly many hours expended on claims that ultimately proved unsuccessful would also have had to have been spent on claims that proved successful and *Hughes, supra,* 578 F.2d at 487, directs that these hours are compensable.

Examining the record in this case it is clear that the retaliation claim was really an ancillary issue to the major portion of the lawsuit. Pretrial discovery was devoted almost entirely to developing the claim that plaintiffs were discriminated against because of their race and that CCP's affirmative action plan was not proper under Title VII. Only a small portion of plaintiffs' proposed findings and briefs concerned the retaliation claim. In my adjudication I characterized this claim "[a]s an adjunct to their [Sokolsky's and Coward's] individual claims," 484 F.Supp. at 419, and I devoted only a small portion of my opinion to this issue. Thus, of the 185.65 hours that remain I will compensate plaintiff's counsel for only a quarter of this time. While this is an arbitrary figure, the absence of any supporting evidence leaves me no choice but to select some percentage that seems reasonable. Therefore, the hours of service portion of the lodestar is 46.4125 hours and this I believe to be an amount reasonably supportive and necessary to the assertion of the successful claims.

The final component of the lodestar calculation is the reasonable hourly rate for the services performed. Obviously, the normal billing rate of the attorney provides a starting point but it is not necessarily the reasonable rate. *See Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1217–18 (3d Cir. 1978). Plaintiff's counsel submitted an affidavit stating that his hourly rate from 1975 through 1977 was $50. per hour; from January to June 2, 1978, $75. per hour; from June of 1978 to June of 1980, $85. per hour; and from June of 1980 to the present, $90. per hour. Defendant does not challenge these rates and I find that they are reasonable.

I turn now to the calculation of the lodestar for the preparation of the fee petition. This work is clearly compensable. *See Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir. 1978). Plaintiffs' counsel claimed five hours for it and I find this amount to be reasonable.

Multiplying the approved hours by the hourly rates, the lodestar calculation proceeds as follows:

| | Hours, Case in Chief | Hours, Fee Petition | Hourly Rate | Lodestar Case in Chief | Lodestar Fee Petition |
|---|---|---|---|---|---|
| 1975–1977 | 22.6 | | $50.00 | $1130.00 | |
| January to June of 1978 | 21.9375 | | 75.00 | 1645.31 | |
| June of 1978 to June of 1980 | 1.875 | 3 | 85.00 | 159.38 | $ 255.00 |
| June of 1980 to present | | 2 | 90.00 | | 180.00 |
| TOTAL | | | | $2934.69 | $ 435.00 |

In determining the reasonableness of the fee, the lodestar or objective value of the case in chief may be adjusted to account for the exceptional circumstances of the case. Two significant factors have been identified by the Third Circuit as possible exceptional circumstances which might justify adjustment of the lodestar figure: (1) the contingent nature of the case; and (2) the quality of the work performed in the particular case. *See Lindy I, supra,* 487 F.2d at 169; *Lindy II, supra,* 540 F.2d at 117.

Plaintiffs' counsel requests an upward adjustment of 50 percent for contingency since the issue of reverse discrimination was a rather novel issue and he therefore took a

great risk in pursuing this lawsuit. I shall decline to adjust the lodestar upward for contingency for two reasons. First, plaintiffs did not prevail on the "novel" issue of reverse discrimination. Second, as to the issue on which they did prevail—retaliation—the evidence was so overwhelming that there was a great probability of success and little risk in developing this portion of the case. *See Lindy II, supra,* 540 F.2d at 117.

In contrast to the quality of the work in general, which is a component of the reasonable hourly rate, a court may adjust the lodestar where the "lawyer discharged the professional burden undertaken with a degree of skill above or below that expected for lawyers of the caliber reflected in the hourly rates." *Lindy II, supra,* 540 F.2d at 118. After an evaluation of the results obtained and the methods used in expediting this case, I find that an adjustment of 25 percent upward based on the quality of the work is warranted, despite the fact that plaintiffs' counsel did not specifically request such an adjustment. Plaintiffs' counsel's "all-round performance," *id.,* was of the highest caliber and "the methods utilized in processing the case," *id.,* were efficient and resulted in the matter proceeding expeditiously during the pre-trial, trial, and post-trial phase. True, plaintiffs were not successful on all their claims. However, as to those claims in which they were successful, counsel's resourceful techniques resulted in a substantial monetary settlement for Sokolsky and Coward that was almost comparable to the potential money damages available. Thus, I am persuaded that an increase of 25 percent to the lodestar for the quality of plaintiffs' counsel's work is warranted.[2]

Plaintiffs also claim reimbursement of $1,555.52 for the costs of this action. *See* Appendix B. At the fee petition hearing, counsel stated that two entries of $25. each were erroneous and this was deducted. As I did with the lodestar above, I reduce the costs by those amounts clearly attributable

to Cohen's portion and the affirmative action aspect of the case.

The $4. in notary fees will not be allowed since the federal rules do not require the filing of verified complaints or answers to interrogatories. The witness fees for Swezey and Evans of $25. each must be deducted for the same reason that I did not allow compensation in attorney's fees for these two witnesses. There remains $1451.42 in costs. As I did with the lodestar, and for the same reasons, this figure will be reduced to a quarter of that amount, $362.85.

The final calculation is as follows:

| | | |
|---|---|---|
| I. | Lodestar (Case-in-Chief) | $2934.65 |
| II. | Multiplier (Quality of Work) | 25% |
| | Subtotal | $3668.31 |
| III. | Lodestar (Fee Petition) | 435.00 |
| IV. | Total Attorney's Fees | $4103.31 |
| V. | Costs | 362.85 |
| TOTAL AWARD | | $4466.16 |

## APPENDIX A

### SCHEDULE

| Date | Time | Work |
|---|---|---|
| 5/75 – 6/76 | 42.0 | Preparation of Complaint, Motion to Dismiss, Motion for Sanctions, Motion for Protective Order |
| 7/76 | 1.0 | Interview of Witness |
| 8/9/76 | .5 | Correspondence |
| 9/14/76 | 4.5 | Bonnell Deposition |
| 11/5/76 | .5 | Meeting with clients |
| 12/15/76 | .5 | Meeting with clients |
| 1/3/77 | 5.0 | Madeline Cohen deposition, Monica Sokolsky |
| 1/5/77 | 2.0 | Jan Coward deposition |
| 1/31/77 | 2.5 | Clayton White deposition |
| 3/18/77 | .3 | |
| 3/31/77 | .3 | |
| 2/1/77 | 2.5 | Baker deposition |
| 4/6/77 | 5.0 | Bobbye Burke deposition, Lee Sylvan deposition · |
| 4/7/77 | 3.0 | Brian Kovach deposition |
| 5/8/77 | 2.0 | Answer to Interrogatories |
| 6/10/77 | 1.5 | Pre-Trial Conference |
| 6/14/77 | 1.5 | Stipulation to Consolidate |

**2.** There shall, however, be no adjustment to the lodestar for the advancement of the substantive

purposes of the Civil Rights Act. I find that the fees awarded today are fair and reasonable.

| Date | Time | Work |
|------|------|------|
| 6/21/77 | 1.5 | Amendment to Complaint |
| 7/7/77 | 1.5 | Deposition—Swezey |
| 7/26/77 | 1.5 | |
| 7/27/77 | 3.5 | |
| 8/5/77 | .5 | |
| 8/17/77 | 3.5 | Trial Preparation—Review & Digest of Depositions |
| 9/1/77 | 2.0 | |
| 9/2/77 | 2.0 | Interview of Witnesses, Preparation of Pre-Trial Order |
| 9/15/77 | 3.5 | |
| 9/20/77 | 2.5 | Assembly of Exhibits, Preparation of Subpoenas |
| 9/21/77 | 2.0 | " |
| 10/5/77 | 2.5 | " |
| 10/20/77 | 1.0 | " |
| 10/24/77 | 2.5 | " |
| 10/26/77 | 1.0 | " |
| 10/27/77 | 1.5 | " |
| 11/2/77 | 1.0 | " |
| 11/7/77 | 1.0 | " |
| 11/8/77 | 1.5 | " |
| 11/10/77 | 1.0 | " |
| 1/12/78 | .5 | " |
| 1/25/78 | 1.5 | " |
| 1/26/78 | 1.5 | " |
| 1/27/78 | 1.0 | " |
| 1/30/78 | 1.0 | " |
| 1/31/78 | 1.0 | " |
| 2/6/78 | 7.5 | Trial |
| 2/7/78 | 7.5 | Trial |
| 2/8/78 | 7.5 | Trial |
| 2/9/78 | 7.5 | Trial: Testimony—Swezey |
| 2/10/78 | 7.5 | Trial: Testimony—Madeline Cohen, Robert Evans, Monica Sokolsky |
| 2/10/78 | 7.5 | " |
| 2/13/78 | 7.5 | " |
| 2/14/78 | 7.5 | Trial: Testimony—Monica Sokolsky, Bobbye Burke, Brian Kovach |
| 2/15/78 | 7.5 | Trial: Testimony—Allen Bonnell, Brian Kovach |
| 2/16/78 | 7.5 | Trial: Testimony—Brian Kovach, Sylvan |
| 2/17/78 | 9.0 | |
| 2/17/78 | 6.0 | Trial: Testimony—Sylvan, Coward |
| 2/20/78 | 7.5 | Trial: Testimony—Skahill, Miller, Brown, White |
| 2/21/78 | 7.5 | Trial: Testimony—Clayton White |
| 2/22/78 | 7.5 | Trial: Testimony—Joy Simpson, Jeff Donaldson, Clayton White |
| 2/23/78 | 7.5 | Trial: Testimony—William Baker |
| 2/24/78 | 4.5 | Trial: Testimony—Bobbye Burke, Madeline Cohen, Jan Coward |
| 5/2/78 | 1.0 | Preparation of Post-Trial Brief, Findings of Fact |
| 5/31/78 | .5 | " |
| 11/16/78 | 2.5 | " |
| 11/17/78 | 5.5 | " |
| 11/20/78 | 6.5 | " |
| 11/22/78 | 2.5 | " |
| 11/27/78 | 11.0 | " |
| 11/28/78 | .5 | " |
| 11/29/78 | 2.0 | " |
| 11/30/78 | 1.5 | Preparation of Post-Trial Brief, Findings of Fact |
| 11/30/78 | 1.0 | " |
| 1/31/80 | 1.5 | Review of Opinion |
| 4/14/80 | .5 | Discussion with Clients |
| 4/22/80 | 2.5 | Pre-Trial Conference |
| 5/6/80 | 1.0 | Preparation of Wage Data |

| Date | Time | Work |
|------|------|------|
| 5/12/80 | 1.0 | " |
| 5/19/80 | 1.0 | " |
| 5/21/80 | 2.0 | Research |
| 5/22/80 | 1.0 | Research |
| 6/3/80 | .5 | Research |
| 6/27/80 | 1.5 | Research |

TOTAL TIME  289.60

# APPENDIX B

## SCHEDULE

### SCHEDULE OF COSTS

COHEN et. al. V. COMMUNITY COLLEGE OF PHILADELPHIA

| DATE | DISBURSEMENT | AMOUNT |
|------|--------------|--------|
| 7/8/75 | Notary Fees | $ 3.00 |
| 7/25/75 | Clerk of Court | 45.00 |
| 9/15/75 | U.S. Marshall | 9.72 |
| 9/24/76 | Knipes Cohen—Depositions | 35.00 |
| 10/15/76 | Knipes Cohen—Depositions | 94.50 |
| 2/3/77 | Harold Schulman—Depositions | 167.45 |
| 2/23/77 | Knipes Cohen—Depositions | 131.50 |
| 3/3/77 | Knipes Cohen—Depositions | 119.25 |
| 5/13/77 | Harold Schulman—Depositions | 212.50 |
| 5/1/77 | Notary Fee | 1.00 |
| 2/1/78 | Witness Fees—Swezey | 25.00 |
| 2/1/78 | Witness Fees—Burke | 25.00 |
| 2/1/78 | Witness Fees—Evans | 25.00 |
| 2/1/78 | Witness Fees—Sylvan | 25.00 |
| 11/13/78 | Notes of Testimony—Harper | 636.50 |
| | TOTAL | $1,555.42 |