**NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, et al., Plaintiffs,**

v.

**The WILMINGTON MEDICAL CENTER, INC., et al., Defendants.**

**Civ. A. No. 76–298.**

United States District Court, D. Delaware.

Dec. 21, 1981.

Marilyn G. Rose and Sanford A. Newman of the Center for Law and Social Policy, Washington, D. C., Douglas Shachtman, Wilmington, Del., and Jeffrey S. Goddess, City Sol. of the City of Wilmington, Wilmington, Del., for plaintiffs.

Rodney M. Layton and William J. Wade of Richards, Layton & Finger, Wilmington, Del., for defendant Wilmington Medical Center, Inc.

## OPINION

LATCHUM, Chief Judge.

Two matters are presently before the Court in this protracted litigation:[1]  (1)

---

1. Ten prior reported opinions in this controversy are: *NAACP v. WMC, Inc.*, 426 F.Supp. 919 (D.Del.1977); *NAACP v. WMC, Inc.*, 436 F.Supp. 1194 (D.Del.1977), *aff'd*, 584 F.2d 619 (C.A.3, 1978); *NAACP v. WMC, Inc.*, 453 F.Supp. 280 (D.Del.1978), *rev'd in part*, 599

plaintiffs' petition for an award of attorneys' fees and incidental legal expenses pursuant to the provisions of 42 U.S.C. § 1988 and 29 U.S.C. § 794a(a)(2)(b),[2] and (2) the motion of the defendant Wilmington Medical Center, Inc. ("WMC") for review of the taxation of costs.[3]

## I. PROCEDURAL HISTORY

In order to understand fully the attorney fee issue now before the Court and to highlight the claims asserted, the relief sought, and the ultimate disposition of those claims on the merits, it is necessary to recite in some detail the procedural history of this intricate litigation.

This litigation grew out of "Plan Omega," the proposal of the WMC to relocate a major portion of its urban hospital facilities and services to a suburban location. Certain black, Puerto Rican and handicapped individuals and groups representing similar persons ("the plaintiffs") commenced this action on September 10, 1976, naming as defendants WMC, the Secretary of the Department of Health, Education and Welfare ("HEW"), the Director of the [Delaware] Bureau of Comprehensive Health Planning ("BCHP"), and the Chairman of the Health Planning Council, Inc. ("HPC").

The original complaint alleged that WMC, as a recipient of federal funds under the medicare and medicaid programs, had violated its obligations to the plaintiffs, beneficiaries of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, by commencing to implement Plan Omega.[4] Plaintiffs also alleged that HEW had violated its duty to enforce Title VI and Section 504: (1) by approving Plan Omega under Section 1122 of the Social Security Act, 42 U.S.C. § 1320a–1 ("Section 1122"); (2) by approving regulations under the Social Security Act which failed to require that a proposal under Section 1122 comply with Title VI and Section 504; (3) by entering into an agreement with BCHP which failed to ensure that proposals under Section 1122 comply with Title VI and Section 504; (4) by adopting a procedure which prohibited HEW review of Section 1122 proposals for substantive compliance with Title VI and Section 504; (5) by following such an improper procedure in approving Plan Omega; and (6) by failing to file an environmental impact statement concerning Plan Omega under the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq. (the "NEPA claim").[5] Finally, the complaint charged that BCHP and HPC had violated Title VI and Section 504 by not adopting procedures to ensure that proposals under Section 1122 comply with Title VI and Section 504 and by making findings and recommending approval of Plan Omega.[6]

The relief sought by the complaint was a judgment: (1) that declares the defendants had violated the above statutes and failed to perform their statutory duties as alleged in various claims outlined above; and (2) that enjoins the implementation of Plan Omega and the relocation of a portion of WMC's facilities.

Plaintiffs filed a first amended complaint which clarified the claims against HEW on December 12, 1976.[7] The first substantive motions which the Court was required to decide were: (a) HEW's motion to dismiss or, alternatively, for summary judgment;[8] (b) BCHP's motion to dismiss[9] on the grounds that the plaintiffs had failed to exhaust their administrative remedies; and

---

F.2d 1247 (C.A.3, 1979); *NAACP v. WMC, Inc.*, 453 F.Supp. 330 (D.Del.1978); *Wilmington United Neighborhoods v. HEW*, 458 F.Supp. 628 (D.Del.1978), *aff'd*, 615 F.2d 112 (C.A.3, 1980); *NAACP v. WMC, Inc.*, 491 F.Supp. 290 (D.Del.1980), *aff'd*, 657 F.2d 1322 (1981).

**2.** Docket Item ("D.I.") 425.

**3.** D.I. 451.

**4.** D.I. 1.

**5.** D.I. 1, ¶ 30.

**6.** D.I. 1, ¶ 31.

**7.** D.I. 52 & 75.

**8.** D.I. 23.

**9.** D.I. 9.

(c) plaintiffs' cross motion for partial summary judgment against HEW.[10] WMC took no part in briefing these motions to dismiss and/or summary judgment. *NAACP v. WMC, Inc.*, 426 F.Supp. 919, 923 (D.Del.1977). Indeed, WMC's counsel had from the beginning of the litigation sought to have the discrimination claims against WMC determined by this Court at the earliest possible time and to this end on November 3, 1976, had moved the Court for a separate trial of the discrimination claims asserted against WMC.[11] At the argument of the cross motions of HEW and plaintiffs on January 6, 1977, WMC's counsel did not support HEW's motion to have the action dismissed for failure to exhaust administrative remedies.[12]

Over the strenuous objections of the plaintiffs,[13] the Court, *sua sponte*, on January 19, 1977 stayed its actions temporarily on the amended complaint and ordered HEW to conduct a civil rights investigation of plaintiffs' discrimination allegations and to reconsider its position regarding a NEPA report. 426 F.Supp. 919 (D.Del.1977). That investigation led to a finding by HEW's Office of Civil Rights in July, 1977 that the implementation of Plan Omega, as presently conceived, would constitute a *prima facie* violation of Title VI and Section 504.[14] HEW also found that, by giving specific assurances in certain areas, WMC could bring Plan Omega into compliance with both statutes.[15] HEW further concluded a NEPA report was unnecessary in Section 1122 review.[16] After several weeks of negotiations between HEW and WMC, as provided in 42 U.S.C. § 2000d–1, WMC on November 1, 1977 voluntarily entered into a Contract of Assurances ("Supplemental Agreement") with HEW in which WMC undertook specifically, *inter alia* : (1) to provide a transportation system for patients, visitors and employees between the Delaware Division and the Southwest Division; (2) to institute a patient allocation system as to services available at both locations to preclude the development of racially differentiated utilization patterns; and (3) to alter construction plans for both facilities to comply with Section 504 requirements.[17]

On August 16, 1977 the Court ruled against the plaintiffs and determined that HEW was not required to prepare a NEPA report with respect to HEW's Section 1122 review of Plan Omega. *NAACP v. WMC, Inc.*, 436 F.Supp. 1194 (D.Del.1977) and the Court of Appeals for the Third Circuit affirmed that decision in 584 F.2d 619 (C.A.3, 1978).

After WMC and HEW entered into the Supplemental Agreement, the plaintiffs filed a second amended complaint which added claims against HEW, challenging the legality of the Supplemental Agreement, and claimed that WMC violated Title VI and Section 504 by voluntarily entering into the Supplemental Agreement.[18] In an opinion filed on April 7, 1978, this Court reviewed HEW's findings and held: (1) that HEW's conclusions, that Plan Omega as modified by the Supplemental Agreement would not violate Title VI or Section 504, were not arbitrary or capricious; (2) that the plaintiffs had no right to bring a private action under those statutes; and (3) summary judgment would be entered in favor of HEW and WMC. *NAACP v. WMC, Inc.*, 453 F.Supp. 280 (D.Del.1978). On appeal, the Third Circuit on June 4, 1979 reversed in part, holding that the plaintiffs did have a private right to a trial *de novo* in this Court on their Title VI and Section 504

---

**10.** D.I. 53.

**11.** D.I. 22; however, plaintiffs opposed WMC's motion for a separate trial (D.I. 286) and the motion was thereafter denied by the Court on November 11, 1976. (D.I. 31.)

**12.** D.I. 72, p. 70.

**13.** D.I. 62, pp. 59–61; D.I. 63, p. 93; D.I. 72, pp. 46–54.

**14.** D.I. 124.

**15.** *Id.*

**16.** *Id.*

**17.** D.I. 169.

**18.** D.I. 197.

claims, and remanded the case to this Court for a trial on the merits. *NAACP v. WMC, Inc.*, 599 F.2d 1247 (C.A.3, 1979).

On June 21, 1978, this Court handed down another opinion, *NAACP v. WMC, Inc.*, 453 F.Supp. 330 (D.Del.1978), which rejected the plaintiffs' claims that HEW's failure to provide the plaintiffs a hearing during its administrative investigation of possible Title VI and Section 504 violations contravened the due process clause of the Fifth Amendment. These due process claims were first raised by the plaintiffs in their second amended complaint filed November 22, 1977.[19] Although both the June 21 and April 7 district court opinions were appealed to the Third Circuit together, the Court of Appeals, because of its finding that the plaintiffs had a right to a trial *de novo* under Title VI and Section 504, found it unnecessary to decide the due process issue.

In a later opinion released on September 22, 1978 in two different but intimately related cases litigated by the same attorneys, this Court also rejected on the merits plaintiffs' various challenges to HEW's approval of Plan Omega under Section 1122. *Wilmington United Neighborhoods v. HEW etc.*, 458 F.Supp. 628 (D.Del.1978). Again this opinion was affirmed by the Court of Appeals. 615 F.2d 112 (C.A.3, 1980).

Following the remand of this case by the Third Circuit for a trial *de novo*, HEW was dismissed from the action on July 16, 1979 in accordance with the mandate of the Court of Appeals[20] and BCHP and HPC and their respective officers were dismissed from this action by agreement of the parties on July 17, 1979.[21]

Then on September 4, 1979, this Court granted plaintiffs leave to file a third amended complaint.[22] This amendment added the City of Wilmington as a party plaintiff and struck those paragraphs relating to HEW in the complaint. Also added were allegations of violations of the Age Discrimination Act of 1975, 42 U.S.C. § 6102 ("Section 6102 claims") and an allegation charging WMC with "intending" the discriminatory consequences alleged under Title VI, Section 504 and Section 6102. After a bench trial lasting more than a month, this Court filed a comprehensive and detailed opinion, concluding that the plaintiffs had failed to prove discrimination under any of the three statutes on any of the claims asserted in the third amended complaint. *NAACP v. WMC, Inc.*, 491 F.Supp. 290 (D.Del.1980). Consequently, final judgment was entered on May 13, 1980 in favor of WMC and against the plaintiffs together with costs.[23] The Court of Appeals for the Third Circuit, sitting *in banc*, affirmed the judgment in whole on June 29, 1981. *NAACP v. WMC, Inc.*, 657 F.2d 1322 (C.A.3, 1981).

## II. PLAINTIFFS' FEE APPLICATION

As near as the Court can ascertain from plaintiffs' attorney fee and legal expense application filed on November 3, 1980,[24] and as supplemented on April 30, 1981,[25] plaintiffs seek attorney's fees in the amount of $313,390.73 and legal expenses in the sum of $8,491.62.[26] Plaintiffs base an award of fees upon the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988, and the 1978 amendments to the Rehabilitation Act, 29 U.S.C. § 794a(b).[27]

42 U.S.C. § 1988 in pertinent part reads:

[I]n any civil action or proceeding, by or on behalf of the United States of Ameri-

---

**19.** D.I. 197.

**20.** D.I. 293.

**21.** D.I. 294.

**22.** D.I. 345.

**23.** D.I. 417.

**24.** D.I. 425, 427, 428, 429 & 430.

**25.** D.I. 441.

**26.** The fee application by its terms does not preclude plaintiffs from applying for alleged additional fees and expenses (D.I. 425, p. 2, footnotes) although no other applications other than those filed on November 3, 1980 and April 30, 1981 have been filed.

**27.** The fee application did not request an award based on the Age Discrimination Act of 1975, 42 U.S.C. § 6102.

ca, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[28]

The attorney fee award provisions of the 1978 Amendments to the Rehabilitation Act track the language of the Civil Rights Attorney's Fee Awards Act.[29]

The Court of Appeals for the Third Circuit in *Hughes v. Repko*, 578 F.2d 483 (C.A.3, 1978) laid down the basic rules for determining a "prevailing party." It stated:

> In order to apply the "prevailing party" language of the statute fairly, we think district courts should analyze the results obtained by the petitioning party on particular claims, regardless of the number of parties. Thus, in the context of an award sought after the entry of final order, a prevailing party on a particular claim is one who fairly can be found by the district court to have essentially succeeded on such a claim, as "claim" is used in Fed.R.Civ.P. 10(b).

> \*　\*　\*　\*　\*　\*

> It is clear to us that the fee-petitioner cannot be treated as a prevailing party to the extent he has been unsuccessful in asserting a claim.

578 F.2d 486–87.

Again in *Bagby v. Beal*, 606 F.2d 411 (C.A.3, 1979), the Third Circuit referring to the above quotation in *Hughes v. Repko, supra*, stated:

> This definition [in Repko] focuses not on the substantive merits of plaintiff's

claims, but rather on the relief ultimately received by the plaintiff.

606 F.2d 415.

■ Applying the principles of the *Hughes* and *Bagby* decisions to the procedural history of this litigation cited in detail above, it is clear that the plaintiffs did not succeed on the merits of any of the discrimination claims asserted against WMC nor did they obtain any of the relief sought against WMC. In these circumstances plaintiffs cannot be considered the prevailing parties with respect to WMC within the meaning of 42 U.S.C. § 1988 or 29 U.S.C. § 794a(b). Nevertheless, the plaintiffs advance two contentions which they argue justify an award of attorney's fees to them against WMC. First, plaintiffs contend that they are entitled to an award of attorney's fees from WMC because they established in the Court of Appeals their right to assert a private right of action to enforce the obligations of WMC to them under Title VI and Section 504. *NAACP v. WMC, Inc.*, 599 F.2d 1247, 1259 (C.A.3, 1979).

Of course, obtaining the ruling on appeal that plaintiffs had a private cause of action and that the case would be remanded for a *de novo* trial on the merits was a procedural victory. However, it did nothing to advance the plaintiffs' claims for relief because the plaintiffs were no closer to a judgment on the merits of their discrimination claims against WMC than they were before the appeal was taken. Thus, plaintiffs did not prevail on the merits of their discrimination claims against WMC since the Court of Appeals held only that the plaintiffs were entitled to a *de novo* trial on the merits of their cause in the district court. *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980);

---

**28.** The Third Circuit Court has held that the phrase "by or on behalf of the United States of America" was meant to modify only the phrase "to enforce, or charging a violation of, a provision of the United States Internal Revenue Code," and not the phrase "or title VI of the Civil Rights Act of 1964." *Shannon v. United States Department of Housing and Urban Development*, 577 F.2d 854, 855 n.2 (C.A.3), *cert. denied*, 439 U.S. 1002, 99 S.Ct. 611, 58

L.Ed.2d 677 (1978); *see also NAACP v. WMC, Inc.*, 599 F.2d 1247, 1255 (C.A.3, 1979).

**29.** 29 U.S.C. § 794a(b) reads in part:

> In any action or proceeding to enforce or charge a violation of provision [of the Rehabilitation Act], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

*Swietlowich v. County of Bucks*, 620 F.2d 33, 34 (C.A.3, 1980).[30]

To the same effect is *Bly v. McLeod*, 605 F.2d 134 (C.A.4, 1979) cited with approval both in *Hanrahan* and *Swietlowich*. In the *Bly* case the Court found that the plaintiffs were not prevailing parties even though they claimed certain procedural victories, including a judgment in the Court of Appeals vacating the district court's dismissal of the action. In denying attorney's fees, the Court said if the plaintiffs had ultimately lost on the merits, their procedural success would not entitle them to a fee award because "in order to recover attorney fees and costs, plaintiffs must show at least some success on the merits." 605 F.2d at 137.

As it turned out after the *de novo* trial following remand of the instant action, plaintiffs were wholly unsuccessful on their claims against WMC and obtained none of the declaratory or injunctive relief that they sought. Under no stretch of the imagination can it be said that plaintiffs became prevailing parties for the purpose of shifting counsel fees to WMC under the fee award acts on the basis of a remand for a new trial.[31] Thus, the Court finds no merit to plaintiffs' first contention.

Plaintiffs' second argument in justification of an award of attorney's fees against WMC is based on the contention that it was the filing of their action which prompted this Court to direct HEW to conduct an investigation to determine whether Plan Omega violated Title VI or Section 504. 426 F.Supp. 919. Thus, plaintiffs say that, when HEW conducted its civil rights investigation and found the original Plan Omega to be in *prima facie* violation of both statutes, causing HEW and WMC to execute voluntarily the supplemental agreement to Plan Omega, plaintiffs became entitled to attorney's fees as their suit acted as a catalyst for the changes to the original Plan Omega. Or as otherwise argued, plaintiffs are entitled to attorney's fees for "all work on the civil rights causes which led to, contributed to, and resulted in the supplemental agreement." [32]

■■ It is true that a plaintiff may be considered a prevailing party under the fee award statutes if he is able to demonstrate both that a defendant voluntarily changed its conduct or position to provide much of the relief sought and that such changes were materially caused by, or were implemented as a direct result of, his lawsuit. *Morrison v. Ayoob*, 627 F.2d 669 (C.A.3, 1980); *Ross v. Horn*, 598 F.2d 1312, 1321–22 (C.A.3, 1979). This principle, however, is not applicable to this case. The mere filing of plaintiffs' complaint did not *ipso facto* prompt the Court to refer the matter to HEW for a civil rights investigation. Rather, the catalyst which materially persuaded this Court to direct HEW to conduct a civil rights investigation were the motions filed

**30.** In *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the district court had directed verdicts against the plaintiffs and the Court of Appeals reversed and remanded for a new trial. In *Swietlowich v. County of Bucks*, 620 F.2d 33, 35 (C.A.3, 1980), judgment had been entered in the district court in defendant's favor but on appeal that judgment was vacated because of error in the jury instructions and the case remanded for a new trial. In both cases, the courts held that plaintiffs were not prevailing parties in obtaining a remand for a new trial within the meaning of the fee award act.

**31.** The cases relied upon by the plaintiffs are inapplicable to the present case. In each of those cases the plaintiff was found to have "prevailed" on the merits of the civil rights claims asserted and obtained some of the relief requested. For example, in *Maher v. Gayne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), plaintiffs through a settlement of the case obtained a "consent decree" and "won substantially all the relief originally sought in her complaint." *Id.* at 127, 100 S.Ct. at 2574. In *Bonnes v. Long*, 599 F.2d 1316 (C.A.4, 1979), plaintiff again obtained some of the relief sought through a "consent decree." In *Nadeau v. Helgemoe*, 581 F.2d 275 (C.A.1, 1978), the plaintiffs obtained a judgment significantly expanding their access to prison library facilities and the court stated that on this issue plaintiffs were entitled to attorney fees. All of these cases are in contrast to the instant litigation where the plaintiffs neither succeeded on any of their claims nor obtained any of the relief sought.

**32.** D.I. 426, p.8.

by HEW and BCHP. It will be recalled from the procedural history of this case that HEW moved to dismiss the complaint as to it, or alternatively for summary judgment,[33] and that BCHP also moved to dismiss[34] as to it on the ground that the plaintiffs had failed to exhaust their administrative remedies. Plaintiffs, in response, moved for partial summary judgment against HEW. 426 F.Supp. at 923. WMC did not participate in the briefing of these issues. 426 F.Supp. 919, 923. Indeed, when WMC's attorney was asked by the Court its position, it was clear that WMC did not support HEW or BCHP's motion to dismiss the case. WMC hoped that the case could "go promptly to trial in order to persuade this Court that there was no discriminatory effect, let alone intent." [35] On the other hand, plaintiffs strenuously argued against HEW's and BCHP's motion to dismiss for failure to exhaust administrative remedies and supported their intentional bypass of the administrative process on the ground that their efforts would have been futile. To support this contention, the plaintiffs created a record to show that HEW lacked the personnel resources to process Title VI and Section 504 complaints.[36] 426 F.Supp. at 924. This position is also revealed in the argument of plaintiffs' counsel on December 28, 1977:

> The third major defect—in fact it is the defect that goes to the heart of everything we have said today. It goes to the heart of everything we have said since last January when we told the Court we did not want the case to be in any way remanded to HEW. HEW would not conduct a full investigation. They would not conduct a competent investigation,

that it didn't have the resources. And, if Your Honor recalls, I think I was in a bit of, probably, a yelling contest with Miss Nadoff, who is the regional attorney, when the Court asked us to come into chambers to discuss whether the case should be sent to HEW, and I took a very strong position. Plaintiffs wanted to try this case before this Court.

D.I. 321, pp. 59–60; *see* D.I. 217 at 88.

It would be most illogical to saddle WMC with attorney's fees for the extensive work of plaintiffs in resisting the motion of HEW and BCHP and the Court's direction to HEW to conduct an administrative review when WMC did not participate in the briefing of these issues at all. Thus, it cannot be said that plaintiffs prevailed over WMC on this phase of the litigation.

After the Court directed HEW, if able, to conduct an administrative civil rights investigation over the strong objection of plaintiffs and the wishes of WMC, HEW found that the original Plan Omega as then conceived would constitute a *prima facie* violation[37] of Title VI and Section 504. HEW also found that WMC could bring Plan Omega into compliance with both statutes with specific assurances in certain areas.[38] There is no question that the Supplemental Agreement subsequently negotiated between HEW and WMC was more specific in its assurances than the general assurance of non-discrimination which WMC had given in the past as a recipient of medicare and medicaid funding.

Immediately following the modification of Plan Omega by the Supplemental Agreement, the plaintiffs amended their com-

---

**33.** D.I. 23.

**34.** D.I. 9.

**35.** D.I. 72, p. 70.

**36.** *E.g.*, D.I. 62, pp. 59–61; D.I. 63, p. 93.

**37.** A *prima facie* case raises an inference of discrimination only because it is presumed that acts, if otherwise unexplained, are more likely than not based on impermissible factors. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67

L.Ed.2d 207 (1981); *Whack v. Peabody & Wind Engineering Co.*, 595 F.2d 190, 193 (C.A.3, 1979).

**38.** D.I. 124; of course, neither this Court nor any other court passed on the legality of the original Plan Omega because WMC and HEW under the statute and regulations voluntarily negotiated a supplemental agreement which gave specific assurances in the areas which HEW believed were necessary to bring Plan Omega into compliance. (D.I. 169.)

plaint to attack Plan Omega as so modified.[39] Plaintiffs never wavered throughout the remainder of this litigation in their contention that Plan Omega as modified by the Supplemental Agreement violated the discrimination statutes involved. Of course, plaintiffs were not either intermediately or ultimately successful on that issue. None of the relief sought originally or later was ever granted to plaintiffs. Thus, the plaintiffs having challenged HEW findings and the Supplemental Agreement as violative of Title VI and Section 504 and having had final judgment entered against them, it would be a most anomalous situation to hold that the plaintiffs prevailed over WMC when HEW and WMC entered into the supplemental agreement.

The Court specifically rejects plaintiffs' argument, moreover, that the Supplemental Agreement and the assurances contained therein were benefits sought by the plaintiffs and that, consequently, they were the catalysts for the modifications made in Plan Omega. The plaintiffs were not parties to HEW administrative investigation and the negotiations which followed. While they did have some input into these proceedings, the Court is convinced, based on its exposure to the facts and law of this case as it developed, that any benefit conferred by the Supplemental Agreement were not casually related to plaintiffs' efforts, but were instead the result of HEW and WMC's independent efforts. The plaintiffs cannot, under any circumstances, be considered as essentially succeeding on the merits of their claims or obtaining the declaratory or injunctive relief which they sought throughout this case—that is, that Plan Omega as modified would discriminate against the poor, the elderly and handicapped.

But even if the Court were to determine (which it has not) that the plaintiffs were in some way instrumental in HEW and WMC entering into the Supplemental Agreement, the Court would still find that the plaintiffs, under the law of this Circuit, have

failed to meet their burden of persuasion on the issue of the fees to be awarded. Plaintiffs concede that "only work performed in support of the claims upon which he prevailed shall be included" in a fee application.[40] *Hughes v. Repko*, 578 F.2d 483, 487 (C.A.3, 1978); *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (C.A.3, 1978). Despite the recognition of this principle, plaintiffs' application covers virtually all the hours devoted to the case from the time the complaint was filed on September 6, 1976 through the second appeal to the Third Circuit on January 10, 1979,[41] based on the general statement that all such work served as a catalyst for, led to, or resulted in the two areas which they claimed to have prevailed. However, the plaintiffs have made no serious effort in their fee application and supporting affidavits to demonstrate—

> ... the number of hours attributable to the successful claim, and also to demonstrate the number of hours so attributable was reasonably necessary to perform the work at issue.

*Hughes v. Repko, supra*, 578 F.2d at 487.

■ Rather than follow this admonition, the plaintiffs claim hours of work related to the dismissal motions of HEW and BCHP on matters relating to the litigation strategy of the government defendants in this case. The Court is aware that many hours claimed related entirely to matters unrelated to WMC and had nothing to do with the benefits now claimed by plaintiffs. The Court concludes that plaintiffs have failed to analyze fairly the times they contributed anything of value to HEW during its administrative investigation.

Therefore, the Court finds and concludes that the plaintiffs were not prevailing parties under the fee statutes asserted and are not entitled to an award of attorney fees. Furthermore, even if it conceivably can be thought that some of plaintiffs' work benefited the plaintiffs, their hours have not been sufficiently analyzed to justify this Court in making such an award.

---

**39.** D.I. 197.

**40.** D.I. 426, p. 27.

**41.** D.I. 425; *see* 599 F.2d 1247.

III. WMC'S MOTION TO REVIEW TAXATION OF COSTS

On May 13, 1980, the Court entered final judgment in this case in favor of WMC and against the plaintiffs together with costs.[42] On June 29, 1981, the Court of Appeals for the Third Circuit sitting *in banc* affirmed this Court's final judgment, 657 F.2d at 1338, and its mandate taxed the cost of appeal against the appellants (plaintiffs).[43] The Clerk of this Court on September 1, 1981, after considering WMC's bill of costs [44] and plaintiffs' objections thereto,[45] taxed the sum of $6,033.50 as costs against the plaintiffs.[46]

A. *Expert Witness Fees and Expenses.*

■ WMC first asks the Court to review the Clerk's denial of the taxation of costs in the amount of $48,823.26 for expert witness fees, travel and expenses.[47] The allowance of expert witness fees and expenses greater than permitted by 28 U.S.C. § 1821 may be granted in the sparing discretion of the trial judge if the testimony played a crucial role in the resolution of the issues presented. Local Rule 6.1B(4); *Roberts v. S.S. Kyriakoula D. Lemos,* 651 F.2d 201 (C.A.3, 1981). While the testimony of these witnesses was helpful to the Court, it cannot hold that their testimony was crucial or indispensible to the determination of this case. Furthermore, the Court is without a factual foundation for determining the reasonableness of such fees and expenses. On their face they appear excessive. In any event, this Court will affirm the Clerk's disallowance of the $48,823.26 for expert witness fees, travel and expenses. The Court, however, will allow the statutory per diem witness fee for the following trial witnesses: W. Glenn Cannon ($30.00), Donald Velsey ($60.00), Richard Coffey ($30.00), Dr. Darrell Thorpe ($30.00), Thomas Barnes ($30.00), and Nick Mavromatis [48] ($30.00), for a total of $210.00. In addition, the statutory per diem witness fee will be allowed the following deposition witnesses: Thomas Barnes ($30.00), W. Glenn Cannon ($30.00), Donald Velsey ($120.00), George Gerber ($30.00), Alistair Law ($30.00), for a total of $240.00.

B. *Statutory Witness Fees.*

■ WMC has also requested statutory per diem fees for James P. Tyler for 18 days of trial and for Oliver Deehan for 20 days of trial when they were present in court but did not testify.[49] Witness fees are not limited to the day a witness testifies but may include those days in which the witness necessarily attends trial. *See* 6 Moore's Federal Practice ¶ 54.77[5.–1] at 1728–29 (and case collected in n.10). The Court finds that it was reasonably necessary for Messrs. Tyler and Deehan, the two witnesses who had lived with the development of Plan Omega from the beginning, to attend trial to hear the development of plaintiffs' case in order to be able to meet plaintiffs' case in chief.[50] Because of the complicated nature of the issues raised by the plaintiffs who had not fleshed-out this trial testimony beforehand, the Court finds that it was reasonably necessary for these

---

42. D.I. 417; on May 23, 1980, the Court denied plaintiffs' motion to amend the final judgment to relieve the plaintiffs of the taxation of costs. D.I. 419.

43. D.I. 443.

44. D.I. 444.

45. D.I. 445 and 449.

46. D.I. 450.

47. The amounts requested are: W. Glenn Cannon of Coopers & Lybrand $16,920.00 (witness fees); Donald Velsey of Metcalf & Associates $11,340.16 (witness fees) and $824.14 (expenses); Richard Coffey and Dr. Darrell Thorpe of Chi Systems $14,268.76 (witness fees) and $3,779.20 (expenses); Dr. Richard Schwartz $1,200.00 (witness fees) and $491.10 (expenses).

48. Originally expert witness fees were requested for Thomas Barnes and Nick Mavromatis but this request was withdrawn in the motion for review of costs (D.I. 451, pp. 4–5).

49. The Clerk allowed WMC statutory per diem fees for 5 days that Mr. Tyler testified and for 3 days that Mr. Deehan testified.

50. D.I. 359, pp. 41–45.

two witnesses to attend each day of trial and the statutory per diem witness fee in the additional amount of $1,140.00 will be allowed.

### C. *Deposition Costs.*

Finally, the Clerk's denial of the costs of deposition transcripts in the amount of $3,882.50 is affirmed for the reasons given by the Clerk of Court.

The above shall constitute the Court's finding of fact and conclusions of law and an order will be entered in accordance with this opinion.